NEW YORK TELEPHONE CO. v. SIEGEL-COOPER CO.

(Supreme Court, Appellate Division, First Department.   March 11, 1910.)

TELEGRAPHS AND TELEPHONES (§ 34*)—RATES—DISCRIMINATION—REBATES.

> While a telephone company is a quasi public corporation, and has no right to exercise unfair, unjust, and unreasonable discrimination as between those similarly situated, that a telephone company allowed a discount of 25 per cent. to clergymen, to charitable institutions, and to the city of New York, did not amount to an unfair or unreasonable discrimination, as against a business corporation conducting a department store requiring extensive telephone service.

> [Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 21; Dec. Dig. § 34.*]

Submission of controversy under agreed statement of facts between the New York Telephone Company and Siegel-Cooper Company. Judgment for plaintiff.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

Frank H. Platt, for plaintiff.
Benjamin G. Paskus, for defendant.

DOWLING, J. This controversy comes before the court upon an agreed statement of facts, pursuant to section 1279, Code Civ. Proc.

On June 7, 1907, the plaintiff, a corporation maintaining and operating the only public telephone system and business in the city of New York, entered into a contract in writing with the defendant, a corporation engaged in conducting a general mercantile business and department store in that city, whereby the former agreed to install and maintain in the latter's department store a telephone station and equipment, consisting of a switch board (with power) and 1,025 sets of telephones wired thereto, connected by 50 lines to the former's exchange system, and to furnish telephone service thereover for the period of one year, and thereafter until the termination of said contract by either party, by the giving of not less than 10 days' previous notice in writing to the other party; for which service the defendant agreed to pay $17,502 annually, payable monthly in advance, for the maintenance of such equipment and connection, and for the right to send in each year 320,000 local messages, and further to pay for local

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

messages in excess of that number four cents each, on demand, and to pay the tolls for foreign messages then or thereafter to be established.

The station and equipment provided for were duly installed about February 1, 1907, service has been rendered continuously since that time, the notice referred to in the contract has never been given, and the same remains in full force and effect, except as it has been modified by mutual consent by changing the amount of equipment maintained by plaintiff and by modifying the payment accordingly. Defendant duly paid all charges against it until January 1, 1908, when it discovered that certain discounts had been allowed, whereupon it ceased paying. The bills rendered since that date aggregate $35,928.-92, for which amount, with interest, plaintiff now seeks judgment; payment having been demanded and refused. It is conceded that the services rendered were of the total value claimed.

The discounts, upon the discovery of the existence of which defendant refused to pay any further bills, had been in existence since January 1, 1905, and consisted in the allowance of a discount of 25 per cent. from the regular schedule rates for local messages charged by plaintiff to all its subscribers, to the following special classes: (a) To the city of New York, upon service paid for by said city; (b) to charitable institutions regularly incorporated as such, in connection with stations placed in such institutions; (c) to clergymen regularly ordained, in connection with stations in their residences or studies. No discount was allowed from the schedule rates on foreign messages.

It is conceded that the allowance of said discount to regularly incorporated charitable institutions has been and is solely an exercise of charity and benevolence on the part of the plaintiff, and the beneficiaries of said discount have been and are performing services of special benefit to the community as a whole, and have been and are worthy and deserving of charitable and benevolent contributions and assistance, and have long been accustomed to receive gratuitous contributions from members of the general public. It is further conceded that the plaintiff's system is largely constructed, maintained, and operated in, upon, under, and over the streets, avenues, and public places in the city of New York, subject to the provisions of statutory and common law, and that the city had and has the control over such streets, avenues, and public places, and over the use thereof by public service corporations, including the plaintiff, and over the construction and maintenance of property or fixtures in, upon, under, or over the same; that the city possesses large powers of regulation, control, and governmental supervision over the plaintiff and over its business; and that the discount in question is allowed because of these facts and as a contribution to the expense and cost of government of the city of New York, whereof defendant is a taxpayer.

While defendant claims to be entitled to the same discount as the three classes named, the real question here presented is whether such discount now allowed is unlawful.

There is not statutory prohibition of the granting of discounts by telephone companies in this state, nor has there been heretofore any

adjudication directly upon this point. But the decisions which originally applied only to common carriers have been extended to gas and electric light companies, and in effect to all public service corporations, and apply with particular force to such as have by state or municipal action been granted a monopoly. The case of Root v. Long Island R. R. Co., 114 N. Y. 300, 21 N. E. 403, 4 L. R. A. 331, 11 Am. St. Rep. 643, is apparently the first case in which the Court of Appeals was called upon to determine the question of discrimination between customers by a common carrier, and it then called attention to the meagerness of the authorities upon the general proposition in this state; the earlier case of Killmer v. N. Y. C. & H. R. R. Co., 100 N. Y. 395, 3 N. E. 293, 53 Am. Rep. 194, having only to do with the effect upon defendant's status, as a common carrier, of certain reservations, in a general act, upon the power of the Legislature to regulate charges. The court then said:

"In determining the duty of a common carrier, we must be reasonable and just. The carrier should be permitted to charge reasonable compensation for the goods transported. He should not, however, be permitted to unreasonably or unjustly discriminate against other individuals to the injury of their business where the conditions are equal. So far as is reasonable, all should be treated alike; but we are aware that absolute equality cannot in all cases be required, for circumstances and conditions may make it impossible or unjust to the carrier. * * * His charges must, therefore, be reasonable, and he must not unjustly discriminate against others, and in determining what would amount to unjust discrimination all the facts and circumstances must be taken into consideration."

In Lough et al. v. Outerbridge et al., 143 N. Y. 271, 38 N. E. 292, 25 L. R. A. 674, 42 Am. St. Rep. 712, the court recognized the right theretofore existent both in the courts and in the Legislature to enforce the duties and obligations growing out of the business of common carriers, as one in which the public was interested. Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77; People v. Budd, 117 N. Y. 1, 22 N. E. 670, 682, 5 L. R. A. 559, 15 Am. St. Rep. 460. Applying the principles of the common law, it was held that a common carrier undertook generally, and not as a casual occupation, to convey and deliver goods for a reasonable compensation, as a business, with or without a special agreement, and for all people indifferently, and, in the absence of a special agreement, he was bound to treat all alike in the sense that he was not permitted to charge any one an excessive price for the service. He had no right in any case, while engaged in this public employment, to exact from any one anything beyond what, under the circumstances, is reasonable and just, and he cannot unreasonably or unjustly discriminate in favor of one or against another where the circumstances and conditions are the same. The court further said:

"Whatever effect may be given to the legislation referred to, in its application to railroads and other corporations deriving their powers and franchises from the state, there can be no doubt that the carrier could at common law make a discount from its reasonable general rates in favor of a particular customer or class of customers, in isolated cases, for special reasons and upon special conditions, without violating any of the duties or obligations to the public inherent in the employment. If the general rates are reasonable, a deviation from the standard by the carrier in favor of particular customers,

for special reasons, not applicable to the whole public, does not furnish to parties not similarly situated any just ground for complaint. When the conditions and circumstances are identical, the charges to all shippers for the same service must be equal."

And it was expressly held that the defendants might lawfully give reduced rates in special cases to particular customers, and refuse them in others where the conditions are different, or to the general public where the regular rates are reasonable. The court quoted with approval from the opinion in Fitchburg Railroad Co. v. Gage, 12 Gray (Mass.) 393, that:

"The principle derived from that source (i. e., the common law) is very plain and simple. It requires equal justice to all. But the equality which is to be observed in relation to the public and to every individual consists in the restricted right to charge in each particular case of service a reasonable compensation and no more. If the carrier confines himself to this, no wrong can be done and no cause afforded for complaint. If for special reasons in isolated cases the carrier sees fit to stipulate for the carriage of goods or merchandise of any class for individuals for a certain time or in certain quantities for less compensation than what is the usual, necessary, and reasonable rate, he may undoubtedly do so without thereby entitling all other persons and parties to the same advantage and relief."

The doctrine laid down in Lough v. Outerbridge has since remained the law of this state, and, when a reargument was ordered of that case, the original opinion was again adopted as the expression of the court. 145 N. Y. 601, 40 N. E. 164. It has been explicitly followed as the opinion in Central New York Telephone Co. v. Averill, 129 App. Div. 757, 114 N. Y. Supp. 99.

So in the United States courts it has been held that under the common law railway carriers were held to but little more than that they should carry for all persons who applied, in the order in which the goods were delivered at the particular station, and that their charges for transportation should be reasonable, and that under the interstate commerce act (Act Cong. Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]), to come within the inhibition of its sections forbidding unjust discriminations, the differences must be made under like conditions; that is, there must be contemporaneous service in the transportation of like kinds of traffic under substantially the same circumstances and conditions. And as to passenger traffic, the positions of the respective persons, or classes, between whom differences in charges are made, must be compared with each other, and there must be found to exist substantial identity of situation and of service, accompanied by irregularity and partiality resulting in undue advantage to one or undue disadvantage to the other, in order to constitute unjust discrimination. Interstate Commerce Commission v. Baltimore & Ohio R. R. Co., 145 U. S. 263, 12 Sup. Ct. 844, 36 L. Ed. 699.

It is only unfair and unjust discrimination that the statute and the common law is aimed at. United States v. Chicago & Northwestern R. R. Co., 127 Fed. 785, 62 C. C. A. 465; Delaware, Lackawanna & Western R. R. Co. v. Kutter, 147 Fed. 51, 77 C. C. A. 315; United States v. Wells Fargo Express Co. (C. C.) 161 Fed. 606.

In the extension of this general doctrine to electric light companies, it was determined that both reason and authority sustained the contention that a corporation, engaged in public service, may not discriminate against one customer in favor of others in charges for the same service and under the same conditions.   Armour Packing Co. v. Edison Electric Illuminating Co., 115 App. Div. 55, 100 N. Y. Supp. 605.

In a later case in the same department, it was held that the mere fact that one man gets an equal amount of current for less money than his neighbor is not conclusive evidence of discrimination; that it must be shown as well that it was under the same circumstances and conditions.   Graver v. Edison Illuminating Co., 126 App. Div. 376, 380, 110 N. Y. Supp. 603.   The dissenting opinion in that case admitted the possibility of the classification of users of electric light into those using it for household purposes and those using it for business.

It may be deduced, from all these authorities, that, granting the fullest application of common-law limitations to all public service corporations, what is prohibited is the exercise of unfair, unjust, and unreasonable discrimination as between those so situated that the conditions and circumstances are identical.

It is difficult to imagine any ground upon which the consideration extended to the three particular classes enumerated can be held to be an unfair, unjust, or unreasonable discrimination against any one. The conditions and circumstances surrounding them and under which they exercise their functions are entirely different from those attending the defendant.   The latter is a corporation engaged in a business, the magnitude of which is indicated, to some extent, by the amount of telephone service which it required.   It is a matter of common knowledge that, under modern commercial conditions, the use of the telephone is an essential adjunct to the satisfactory transaction of business.   It is a substitute for purchasing in person, saving time, exertion, and expense.   It is now more than a mere incident in business life.   Clergymen, charitable institutions, and the municipality are not competitors or rivals in business of the defendant.   What helps them does not damage it.

It does not appear that the concession to the former adds one iota to the cost of the service furnished to the latter.   If the corporation chooses to exercise benevolence by granting a reduction from its regular charge to those who are universally recognized as the proper recipients of consideration, that is a matter between the corporation and its stockholders, who are conferring the favor, and not a concern of the defendant, which contributes nothing to it.   If the corporation chooses to recognize its obligation to the city by assisting in decreasing the expenses of government to the extent of a percentage of the charges for telephone service for official needs, it is doing that which proportionately reduces the burden upon the defendant and all other taxpayers, and this unusual recognition of a debt of gratitude should not be discouraged.

The courts have recognized the right of a common carrier to carry a person free who is unable to pay fare, or to carry supplies at nominal

rates to communities scourged by disease or rendered destitute by floods or other casualty. Hays v. Pennsylvania Co. (C. C.) 12 Fed. 309. These are exercises of benevolence. They have also upheld the right, even under the common law, of a common carrier to allow ministers of the gospel to travel on half-fare tickets (United States v. Chicago & Northwestern R. R. Co., 127 Fed. 790, 62 C. C. A. 465), and to extend more favorable terms to a state or municipal government (Interstate Commerce Commission v. Baltimore & Ohio R. Co., 145 U. S. 278, 12 Sup. Ct. 844, 36 L. Ed. 699).

In a case of a gas company, it was said that to furnish gas to the city of New York for 75 cents per 1,000 feet, while private consumers paid 80 cents, was not an illegal discrimination. Willcox v. Consolidated Gas Co., 212 U. S. 54, 29 Sup. Ct. 192, 53 L. Ed. 382.

That the general policy of almost every state where legislation has been had upon the subject of unjust discrimination is to recognize certain concessions in rates made under the common law as still proper to be made, even in the face of the existence of a general prohibition against discrimination, is found in the exemptions expressly made by the statutes themselves. Thus the right to give free or reduced rate transportation, despite the statute, either to persons or property, was granted to common carriers in Arkansas, Delaware, Indiana, Iowa, Louisiana, Michigan, North Carolina, Ohio, Oregon, South Carolina, South Dakota, Utah, Washington, and Wisconsin, as to the government of the state or of a municipality; in Arkansas, Delaware, Florida, Indiana, Iowa, Louisiana, Michigan, Minnesota, North Carolina, Ohio, Oregon, South Dakota, Texas, Utah, Virginia, and Washington, as to ministers of the gospel; in Arkansas, Delaware, Florida, Indiana, Iowa, Louisiana, Michigan, Minnesota, Mississippi, North Carolina, Ohio, Oregon, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, Wisconsin, as to certain specified charitable and benevolent objects. Under the interstate commerce act it was expressly provided, among other exemptions (section 22 as amended by Act March 2, 1889, c. 382, § 9, 25 Stat. 862 [U. S. Comp. St. 1901, p. 3170]), that nothing therein contained should prohibit the free carriage, storing, or handling of property free or at reduced rates for the United States, state or municipal governments, or for charitable purposes; or the free carriage of destitute and homeless persons transported by charitable societies, and the necessary agents employed in such transportation; or the giving of reduced rates to ministers of religion.

Finally, in the public service commissions law of this state (Laws 1907, c. 429), common carriers were expressly allowed to give free transportation to ministers of religion, inmates of hospitals, charitable and eleemosynary institutions, and persons engaged exclusively in charitable and eleemosynary work, indigent and homeless persons, and the agents accompanying them when sent by charitable societies; as well as to give free or reduced rate transportation of persons or property for the United States, state, or municipal governments. Section 33.

It follows, therefore, that the discounts of 25 per cent. heretofore given to clergymen, to charitable institutions, and to the city of New

York do not amount to an unfair, unjust, or unreasonable discrimination, and that they are not illegal. The contract between plaintiff and defendant not being void as violative of any statute, nor as against public policy nor under the common law, defendant is liable to plaintiff thereunder for the amount due for the service concededly rendered.

Judgment is therefore directed in favor of plaintiff against defendant in the sum of $37,750.61, with interest on $35,928.92 thereof from October 1, 1909, and with costs. All concur.