[No. 9484. Department One. August 19, 1911.]

## LILLY COMPANY, *Appellant*, v. NORTHERN PACIFIC RAILWAY COMPANY, *Respondent*.[1]

COURTS—JURISDICTION — COMMERCE — CARRIERS — DISCRIMINATION. The state courts have jurisdiction of an action brought by a shipper to recover for unjust discrimination by a common carrier engaged in interstate commerce, in violation of the act of Congress regulating interstate commerce, in view of § 22 of the act (U. S. Comp. Laws 1901, p. 3170) providing that nothing in the act shall abridge existing common law remedies; since the right existed at common law.

CARRIERS—DISCRIMINATION—ACTION FOR DAMAGES — COMPLAINT— SUFFICIENCY. In an action by a shipper for unjust discrimination by a common carrier, seeking to recover switching charges paid, a complaint alleging that the defendant falsely represented that such charges were paid by other shippers when in fact the defendant was absorbing or itself paying the switching charges of many other shippers, is insufficient where it fails to allege that the defendant had failed to comply with the provisions of the act to regulate commerce with reference to the filing of a schedule of rates and that the rate charge exceeded the rate shown on the schedule.

Appeal from a judgment of the superior court for King county, Albertson, J., entered November 21, 1910, upon sustaining a demurrer to the complaint, dismissing an action in tort. Affirmed.

*John H. Allen*, for appellant.

*Geo. T. Reid, J. W. Quick*, and *L. B. da Ponte*, for respondent.

FULLERTON, J.—This is an appeal by the plaintiff from a judgment dismissing its action after a demurrer to the complaint therein had been interposed and sustained.

[1]Reported in 117 Pac. 401.

The complaint, after alleging the corporate capacity of the defendant and that it was a common carrier of both interstate and intrastate commerce, continued as follows:

"(3)    That between the 6th day of July, 1904, and the 14th day of June, 1909, inclusive, the said railway company for hire, undertook and agreed to transport and deliver from said St. Paul and other points along its line of railway, freight in car load lots to be delivered to the said plaintiff at Seattle, state of Washington.

"(4)    That the said defendant falsely and fraudulently represented to this plaintiff at said time that there was certain switching charges levied by its connecting carrier, Columbia & Puget Sound Railway Company, for switching said car load lots of freight in and onto said track, onto or near the warehouse of this plaintiff, so that said cars might and could be unloaded by this plaintiff, and that said switching charges were made and collected by said connecting carrier from all consignees from all points along its line of railway, and falsely and fraudulently represented to this plaintiff that said switching charges were charged and collected by said company from each and every and all of the consignees receiving freight in car load lots over said Northern Pacific Railway Company's line into Seattle situated in all respects similar to this plaintiff, when in truth and in fact said defendant was absorbing or paying itself the said switching charges of many other consignees so situated as aforesaid and from same point or points in all respects similar to those from which plaintiff's freight was shipped as aforesaid, and by means of said false and fraudulent representations by the said defendant, this plaintiff was induced to, and did, pay to the Columbia & Puget Sound Railway Co., between said times the sum of one thousand ninety and 50-100 ($1090.50) dollars, to the damage of this plaintiff in said sum.

"(5)    That this plaintiff for the first time on or about, to wit, October 27th, 1909, discovered that the said representations, by and through which and by means of which the defendant caused this plaintiff to pay the sum of one thousand ninety and 50-100 ($1090.50) dollars as aforesaid were false and untrue, and by means of which this plaintiff was damaged by an unjust and illegal discrimination in said sum of one thousand ninety and 50-100 ($1090.50) dollars."

The demurrer was based on two grounds, first, that the court was without jurisdiction of the subject-matter of the action; and second, that the complaint did not state facts sufficient to constitute a cause of action. The complaint, it will be observed, is founded on the assumption that the respondent, a common carrier, made unjust discriminations to the appellant's damage in freight charges for interstate commerce shipments between the shipments of the appellant and other shippers similarly situated.

The first branch of the demurrer suggests the question whether the act to regulate commerce, and the acts amendatory thereof, enacted by the Congress of the United States, have taken away a shipper's right to maintain an action in the state courts for unjust discrimination on the part of a common carrier of interstate commerce. We do not think that it did, or was so intended. While the ninth section of the act (U. S. Compiled Laws 1901, p. 3159) might seemingly confine the remedies for such a breach of duty to the commission provided for by the act, or to the district or circuit courts of the United States, the twenty-second section (Id., p. 3170-71), which was inserted to more clearly define the operation of the act, provides that "nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies." This restriction on the prior provisions of the act makes it clear that the Congress did not intend to take away the jurisdiction of the state courts to maintain actions for breaches of duty in the carrier which would give rise to a cause of action at common law or under the state statute. *Illinois Cent. R. Co. v. Henderson Elev. Co.*, 138 Ky. 220, 127 S. W. 779; *Southern Pac. Co. v. Crenshaw*, 5 Ga. App. 675. The common law, as administered by the American courts at least, gave a shipper a right of action against a common carrier for a discrimination in freight rates between the shipper and another similarly situated, whenever the effect of the discrimination was to injure

the shipper in his trade or business. All discriminations were not actionable, but unjust and unreasonable discriminations, those that operated to the special injury of the shipper against whom the discrimination was made, were clearly so. *Scofield v. Railway Co.*, 43 Ohio St. 571, 54 Am. Rep. 846; *Messenger v. Pennsylvania R. Co.*, 36 N. J. L. 407, 13 Am. Rep. 457; *McDuffee v. Portland & Rochester R.*, 52 N. H. 430, 13 Am. Rep. 72; *Kellogg v. Sowerby*, 93 App. Div. 124, 87 N. Y. Supp. 412; *Vincent v. Chicago etc. R. Co.* 49 Ill. 33. We think, therefore, that the superior court had jurisdiction of the subject-matter of the appellant's action.

On the second ground stated, the demurrer was properly sustained. It will be observed that the appellant does not allege that the carrier had not complied with the provision of the act to regulate commerce with reference to filing a schedule of rates, nor does it allege that by the rate charged it exceeded the rate shown on the schedule. Since there is no allegation of a violation of the law in these respects, it will be presumed there was no such violation. The allegation, therefore, that the respondent was absorbing or was itself paying the switching charges for many other consignors situated similarly to the appellant, must mean that these consignors were getting their freight hauled at less charge than the scheduled rate. In other words, the allegations in the complaint amount to an allegation to the effect that the respondent, under like circumstances and conditions, hauled freight for certain other persons at a less rate than its scheduled rate, and falsely and fraudulently represented to the appellant to the contrary. But clearly this alone does not state a cause of action, either at common law or under the statute. At common law, as we have shown, a shipper could recover for unjust and unreasonable discriminations only, when they operated to his injury. He could not recover damages because of the mere fact that the carrier had carried freight for some other person at a less rate than he had been charged. All he could exact for himself was a reasonable

rate, and good faith on the part of the carrier; namely, that the carrier would not so manipulate its charges as to injure him in his trade or business. The act to regulate commerce goes no farther in this respect than the common law rule. It provides (§ 8) that in case any common carrier subject to the provisions of the act shall do, cause to be done, or permit to be done any act, matter or thing therein declared to be unlawful, it shall be liable to the person or persons injured thereby for the full amount of damages suffered. The person injured only can recover. No right of action is given to one shipper of freight merely because another shipper obtained a less rate than the schedule rate or the rate that was accorded the first shipper.

The appellant's complaint is based on the contrary assumption. He alleges that "many" consignors of freight procured their freight shipped without paying the additional switching charges complained of, and draws the conclusion, from that fact alone, that it can recover all of the switching charges it has paid on similar hauls for a series of years, regardless of the question whether it is specially damaged or not. If this doctrine be sound, any person who has shipped freight on a common carrier has a right of action against the carrier if he can find that the carrier has ever hauled freight of similar kind under similar circumstances for less charge than he paid for his own shipment. But the doctrine is not sound. It would allow a recovery by a private person where no injury is suffered, which is contrary to the first principles of justice.

The judgment is affirmed.

DUNBAR, C. J., MOUNT, and GOSE, JJ., concur.