New York Telephone Company, Respondent, *v.* Siegel-Cooper Company, Appellant.

Telephone companies — may lawfully make rebate to a municipal corporation, charitable institutions and clergymen.

1. Upon the submission of a controversy without action the court can draw no inference of fact from facts as stipulated.

2. Public service corporations, common carriers and others engaged in serving the public cannot make unreasonable and unjust discriminations between their patrons. The rule requires reasonable and impartial charges to all, but the exception permits a reduction when special facts make it reasonable and just. The rate charged must not only be reasonable but uniform, so that all are treated alike under like circumstances. There can be no favoritism or arbitrary reduction in favor of a particular customer, and no undue advantage to one person through undue disadvantage to another, but discriminations founded on reason and justice may be made.

3. The law against unreasonable discrimination rests on public policy. It is forbidden because it is opposed to the interest of the public, which requires that all should be treated alike under like

circumstances.  Discriminations, however, in favor of the public are not opposed to public policy, because they benefit the people generally by relieving them of part of their burdens.  In the absence of legislation upon the subject such discriminations cannot be held illegal as matter of law.

4. A telephone company, with an exclusive right to use the streets of the city of New York in order to carry on its business, may make a discount from its usual charges for telephone service, in favor of the city itself, regularly incorporated charitable institutions and regularly ordained clergymen, without entitling all its other patrons to a like discount for service of the same kind.

*N. Y. Telephone Co. v. Siegel-Cooper Co.*, 137 App. Div. 158, affirmed.

(Argued June 12, 1911; decided October 3, 1911.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 11, 1910, in favor of plaintiff upon the submission of a controversy pursuant to section 1279 of the Code of Civil Procedure.

The nature of the controversy and the facts, so far as material, are stated in the opinion.

*Benjamin G. Paskus* and *Edward Petigor* for appellant.  The plaintiff may not discriminate between its patrons as to rates, except where the service rendered or the conditions thereof are different.  The plaintiff may not charge patrons receiving the same service different rates, and must charge all patrons receiving the same service one rate.  In other words, rates cannot be based on a classification of patrons as distinguished from the character and conditions of the service rendered.  (*A. P. Co.* v. *E. E. Ill. Co.*, 115 App. Div. 51; *Wright* v. *G. Tel. Co.*, 112 App. Div. 745; *Graver* v. *E. E. Ill. Co.*, 126 App. Div. 371; *Lough* v. *Outerbridge*, 143 N. Y. 271; *Menacho* v. *Ward*, 27 Fed. Rep. 529; *Root* v. *L. I. R. R. Co.*, 114 N. Y. 300; *D., etc., R. R. Co.* v. *Interstate Com. Comm.*, 166 Fed. Rep. 499; *A. & V. R. R. Co.* v. *R. R. Comm.*, 203 U. S. 496; *T. & P. R. R. Co.* v. *A. C. O. Co.*, 204 U. S. 426; *U. S.* v. *W. F. Express Co.*,

161 Fed. Rep. 606.) The defendant is, so far as it is a patron of the plaintiff, in competition with all other patrons of the plaintiff, and is damaged by the discounts allowed to others receiving the same service. (*Willcox* v. *C. Gas Co.*, 212 U. S. 19.)

*Morgan J. O'Brien, Frank H. Platt* and *Charles T. Russell* for respondent. Unless the discounts allowed by the telephone company amounted to an unjust and unreasonable discrimination, they were not illegal and the contention of the Siegel-Cooper Company was properly rejected. (*Marx* v. *Brogan*, 188 N. Y. 431; *Bradley* v. *Crane*, 201 N. Y. 14; *F. R. R. Co.* v. *Gage*, 12 Gray, 393; *Root* v. *L. I. R. R. Co.*, 114 N. Y. 300; *Lough* v. *Outerbridge*, 143 N. Y. 271.) The discounts allowed by the telephone company which the defendant makes the basis of its claim were not unjust or unreasonable discrimination towards any one. (*Hoover* v. *Penn. R. R. Co.*, 156 Penn. St. 220; *Hays* v. *Penn. Co.*, 12 Fed. Rep. 309; *I. C. Comm.* v. *B. & O. R. R. Co.*, 43 Fed. Rep. 37; 145 U. S. 263; *U. S.* v. *C. & N. W. R. R. Co.*, 127 Fed. Rep. 790; *City of Superior* v. *D. C. Tel. Co.*, 122 N. W. Rep. 1023; *Willcox* v. *C. G. Co.*, 212 U. S. 19.) There is no claim in this case that the rates charged defendant are not reasonable and, therefore, no basis for saying that defendant is compelled against its will to contribute to charity, religion or the government. (*Wright* v. *G. Tel. Co.*, 112 App. Div. 745; *McDuffee* v. *P. & R. R. R. Co.*, 52 N. H. 430.)

Vann, J. The question presented by this appeal is whether a telephone company, with an exclusive right to use the streets of the city of New York in order to carry on its business, may make a discount of twenty-five per cent from its usual charges for telephone service, in favor of the city itself, regularly incorporated charitable institutions and regularly ordained clergymen, without entitling all its other patrons to a like discount for service of the

same kind? This question is presented by an agreed statement of facts, which are so fully set forth in the opinion below that it is unnecessary to now repeat them in detail. (137 App. Div. 158.) The plaintiff claims that it is entitled to recover the sum of $35,928.92, besides interest, for telephone service rendered to the defendant between the first of January, 1908, and the first of October, 1909. The defendant claims that as the service rendered to itself was identical with that rendered to those in whose favor a discount of twenty-five per cent was made, it is entitled to the same discount on all sums charged for telephone service after the first of January, 1908, when it learned of such discrimination and notified the plaintiff that it should claim a similar reduction.

The service in question was rendered under a written contract between the parties dated June 7, 1907, which was before the Public Service Commissions Law went into effect, whereby the plaintiff agreed to equip the department store of the defendant with a switch board and 1,014 sets of telephones and furnish telephone service to the extent of 320,000 local messages at the rate of $17,502 per year with four cents for each message in excess of that number. Either party had the right to terminate the contract after the first year by giving ten days' notice in writing, but no notice was given and the price charged was at the rate provided by the contract. The discount in question was "not based upon any difference in the cost, character or conditions of the service rendered and equipment furnished, but * * * upon the character and description of the patrons using such service." The rebate to the city was made "as a contribution to the expense and cost of the government of the city of New York," which has control over the streets used by the plaintiff in its business, "and over the construction and maintenance of property or fixtures in the same and * * * large powers of regulation, control and governmental supervision over the plaintiff and over the construc-

tion, maintenance and operation of its telephone system and business in said city." The discount to the other two classes was an exercise of charity and benevolence on the part of the plaintiff to worthy and deserving patrons for services rendered of special benefit to the community as a whole in accordance with a custom of long standing under which they have received gratuitous contributions from members of the general public.

The controversy does not arise between the state and the plaintiff, or between the plaintiff and its stockholders, but between the plaintiff and a customer which had agreed to pay at the rate charged, although it now claims that it cannot be compelled to pay at that rate on account of a lower rate charged to the classes named under the circumstances stated. When the contract was made there was no statute relating to the subject in force in this state and our decision, therefore, must rest on the principles of the common law. If the defendant is entitled to the deduction claimed all other patrons of the plaintiff are entitled to the same deduction under like circumstances. (*Killmer* v. *N. Y. C. & H. R. R. R. Co.*, 100 N. Y. 395, 401.)

The favored classes do not compete with the defendant in business and there is no statement as to the effect of the discrimination, or that it adds appreciably to the cost of the general service. Any presumption there may be upon the subject is not one of law but of fact and upon the submission of a controversy without action the court can draw no inference of fact even from the facts as stipulated. (*Bradley* v. *Crane*, 201 N. Y. 14, 20; *Marx* v. *Brogan*, 188 N. Y. 431.) It is stated as a fact that the service rendered was worth the price charged and it is not stated as a fact that the discrimination was unreasonable or unjust, but the defendant insists that as the plaintiff is engaged in a public calling it is subject to a rigid rule requiring it to charge all patrons receiving the same service at the same rate, with no right to discriminate on

account of the character of its customers as distinguished from the character of its service. The defense is founded solely on unlawful discrimination. There is no statement that damages in any amount were sustained by the defendant, which received full value for the claim now made against it, and the plaintiff insists that under these circumstances charging one party too little is not charging other parties too much.

There are but few decisions by this court bearing upon the subject. The earliest case, decided in 1885, turned on the question of waiver, and is of value here only in the assumption that a common carrier may not charge an unreasonable sum for the transportation of freight. (*Killmer* v. *N. Y. C. & H. R. R. R. Co.*, 100 N. Y. 395.) The actual decision is well expressed by Judge Andrews in a single sentence of his opinion: "But the common-law duty does not preclude special contracts between railroad corporations and shippers, regulating the freight charge, and where, as in this case, freight has been carried for a long course of years, at the schedule price, the shipper making no objection and no inquiry as to the reasonableness of the charge, and when it was his interest to object if the charge was unreasonable, he must, we think, be deemed to have assented to the charge as reasonable, and to have voluntarily waived any objection thereto." (p. 402.)

In the next case, decided in 1889, Judge Haight, speaking for all the judges, said: "In determining the duty of a common carrier we must be reasonable and just. The carrier should be permitted to charge reasonable compensation for the goods transported. He should not, however, be permitted to unreasonably or unjustly discriminate against other individuals to the injury of their business where the conditions are equal. So far as is reasonable all should be treated alike; but we are aware that absolute equality cannot in all cases be required, for circumstances and conditions may make it

impossible or unjust to the carrier. * * * His charges must, therefore, be reasonable, and he must not unjustly discriminate against others, and in determining what would amount to unjust discrimination all the facts and circumstances must be taken into consideration. This raises a question of fact which must ordinarily be determined by the trial court." After intimating that the stipulation of the contract then in question, providing for a rebate of fifteen cents per ton from the regular tariff rates, might be an unjust discrimination as matter of law if that provision had stood alone, the learned judge recited facts tending to show a substantial consideration for the rebate moving from the plaintiff to the defendant, and then concluded as follows: "Therefore, in this case, the question is one of fact, and not of law, and inasmuch as the discrimination has not been found to be unjust or unreasonable, the judgment cannot be disturbed." (*Root* v. *Long Island R. R. Co.,* 114 N. Y. 300, 306.)

In *Lough* v. *Outerbridge* (143 N. Y. 271), decided in 1894, the court laid down the rule that "A common carrier is bound to convey and deliver goods for a reasonable compensation, and may not, where the circumstances and conditions are the same, unreasonably or unjustly discriminate in favor of one against another," but "it may make a discount from its reasonable general rates in favor of a particular customer or class of customers in isolated cases for special reasons and upon special conditions." The action was brought by a shipper to compel the defendants, as common carriers, to grant him "terms, facilities and accommodation for transportation of freight * * * equal to those granted other shippers," and the judgment of the trial court dismissing the complaint was affirmed.

Cases from other jurisdictions are cited by counsel, the most of which are reviewed in the able opinion below. (137 App. Div. 158.) They all tend to establish the same general principle that common carriers and others

engaged in serving the public cannot make unreasonable and unjust discriminations between their patrons. (*Fitchburg R. R. Co.* v. *Gage,* 12 Gray [78 Mass.], 393; *McDuffee* v. *Portland & Rochester R. R.,* 52 N. H. 430; *Hoover* v. *Penn. R. R.,* 156 Penn. St. 220; *City of Superior* v. *Douglas Co. Tel. Co.,* 141 Wis. 363; *D., L. & W. R. R. Co.* v. *Kutter,* 147 Fed. Rep. 51; *Interstate Commerce Commission* v. *Baltimore & Ohio R. R. Co.,* 145 U. S. 263; *Western Union Tel. Co.* v. *Call Publishing Co.,* 181 U. S. 92; Elliot on Railroads, §§ 1467, 1684; Hutchinson on Carriers [3rd ed.], § 520.) While many of the cases relate to common carriers only, the same principle applies to all public utility corporations.

The common law upon the subject is founded on public policy, which requires one engaged in a public calling to charge a reasonable and uniform price to all persons for the same services rendered under the same circumstances. Special contracts are not absolutely forbidden, for rates may vary as conditions change, but there can be no discrimination without a reasonable basis therefor. The rule requires reasonable and impartial charges to all, but the exception permits a reduction when special facts make it reasonable and just. The rate charged must not only be reasonable but uniform, so that all are treated alike under like circumstances. There can be no favoritism, no arbitrary reduction in favor of a particular customer, and no undue advantage to one person through undue disadvantage to another, but discriminations founded on reason and justice may be made. Whether a discrimination is unreasonable or not is usually a question of fact, but the parties in this case have made no stipulation on that subject in their statement of the facts and we cannot find a fact even if we think that the facts as agreed upon would permit the inference. The defense, therefore, must fail, regardless of any other consideration, unless we hold that one or more of the discriminations in question was unreasonable as matter of law.

No discrimination was made by the plaintiff in favor of any class of customers except the three expressly named and for time out of mind discounts have been allowed by common carriers and others conducting a business in which the public has an interest, for services rendered to clergymen and institutions of charity, because they are engaged in the work of benefiting mankind and are supported by contributions from the public. For these reasons their property is exempt from taxation wholly or in part. They carry on no business, do not compete with others and are not engaged in making money. It is the general belief that they render full value for what they receive by caring for the sick and wounded, or helping all to lead orderly lives.

The parties expressly stipulated that the charitable institutions in question are performing services of special benefit to the community as a whole, are worthy of charitable assistance and have long been accustomed to receive contributions from members of the general public. They further stipulated that the discount to the city of New York was allowed on account of its intimate relation to the plaintiff through its control of streets and its power of regulation, " as a contribution to the expense and cost of the government of the city of New York." The plaintiff received from the city for a small consideration a franchise of immense value without which it could not carry on its business at all. While under no legal obligation to discriminate in favor of the city, there is a strong equitable obligation to do so, founded on benefits received and supported by custom. All the reductions are of commercial value to the plaintiff as an advertisement of its business and they tend to increase its patronage by making the management popular. It may be further said that, as one of the favored classes through limitation of means might not subscribe for telephone service at all, and the other two only to a less extent unless a discount were allowed, while many general cus-

tomers would wish to communicate with all three, the discrimination made the general service more valuable. We regard these considerations as material in determining whether the favored classes are in a different situation and are surrounded by different circumstances from those affecting the other patrons of the plaintiff.

Moreover, the law against unreasonable discrimination rests on public policy. It is forbidden because it is opposed to the interest of the public, which requires that all should be treated alike under like circumstances. Discriminations, however, in favor of the public are not opposed to public policy, because they benefit the people generally by relieving them of part of their burdens. In the absence of legislation upon the subject such discriminations cannot be held illegal as matter of law without overturning the foundation upon which the rule itself is built.

Both legislation and judicial authority favor such discriminations as are now called in question. It is expressly stipulated that in twenty-one states of the Union railway corporations, and in some thereof all common carriers, are expressly prohibited from charging any person for the transportation of passengers or freight a greater sum than is charged for like services under similar circumstances and conditions, but in all of said states certain persons or classes of patrons are expressly excepted from the operation of the statutory prohibitions and permitted to receive from the carrier free transportation or reduced rates therefor. In fourteen states the government of the state and the municipal governments within the state are thus excepted; in sixteen, ministers of religion; in fourteen, charitable purposes generally; in six, destitute and indigent persons; in nine, inmates of hospitals and charitable institutions, and in six, persons engaged exclusively in charitable work are likewise excepted. In one state a similar provision is embeded in its constitution, as is also expressly stipulated in the statement of facts. The Pub-

lic Service Commissions Law of this state, in force now but not when the contract before us was made, contains stringent prohibitions against discrimination in charges by common carriers, yet expressly permits them to give free transportation to ministers of religion, inmates of hospitals, charitable institutions and soldiers' homes, and all persons engaged exclusively in charitable work and several other classes of like character, as well as to give free or reduced rates of transportation of person or property for the United States, state or municipal government. (L. 1907, ch. 429, § 33.) The Interstate Commerce Act contains similar provisions. (§ 1.) The parties in expressly mentioning such legislation in their statement of the facts evidently regarded it, and we regard it, as strongly tending to show the state of public opinion upon the subject and this has an important bearing, because as a general rule discriminations having the support of strong public sentiment are not unreasonable as matter of law.

The courts also favor such discriminations because they are in the interest of the public and thus benefit the people generally. In *Hays & Co.* v. *Pennsylvania Company* (12 Fed. Rep. 309, 311) it was said: "It is enough for present purposes to say that the defendant has no right to make unreasonable and unjust discriminations. But what are such discriminations? No rule can be formulated with sufficient flexibility to apply to every case that may arise. It may, however, be said that it is only when the discrimination enures to the undue advantage of one man, in consequence of some injustice inflicted on another that the law intervenes for the protection of the latter. Harmless discrimination may be indulged in. For instance, the carrying of one person, who is unable to pay fare, free, is no injustice to other passengers who may be required to pay the reasonable and regular rates fixed by the company. Nor would the carrying of supplies at nominal rates to communities scourged by disease, or rendered destitute by floods or other casualty, entitle

other communities to have their supplies carried at the same rate. It is the custom, we believe, for railroad companies to carry fertilizers and machinery for mining and manufacturing purposes to be employed along the line of their respective roads to develop the country and stimulate production, as a means of insuring a permanent increase of their business, at lower rates than are charged on other classes of freight, because such discrimination, while it tends to advance the interest of all, works no injustice to any one."

In *United States* v. *Chicago & Northwestern Ry. Co.* (127 Fed. Rep. 785, 790) the Circuit Court of Appeals for the seventh circuit used this language: "It has always been held lawful at common law, and is so under the statute, to allow ministers of the gospel to travel on half-fare tickets. They do not come into competition with business men, and no injustice is done to anybody. But if a transportation company should charge the ministers of one denomination full fare, and those of another half fare, this would be illegal, as involving an unjust discrimination, both at common law and under the statute."

In *City of Superior* v. *Douglas County Telephone Co.* (141 Wis. 363), in holding that a contract binding a telephone company operating in a city to maintain, without charge, telephones in the public offices of the city, is not invalid as contrary to public policy, the court said: "The contract in this case having been made before the legislation occurred prohibiting discriminatory rates, such legislation does not cut any figure in the case. If the contract were valid when made it is within the constitutional protection precluding the legislature from impairing the obligations of contracts. * * * Discriminatory contracts between public utility corporations and their patrons which are held to be void as inimical to the public good are so held because unreasonable advantage is given to one customer or a class over others, whereas all have a moral and legal right to equality of treatment.

33

In case of the contract being between a private corporation and the state or other public corporation, whatever advantage the particular customer has over general customers obviously enures to the benefit of the latter in the aggregate. In other words, in the ultimate there is no discrimination which is inimical to the public good, and, hence no violation of public policy. Such is the situation here. If one concede that the apppellant under the contract was a favored customer, in that if the same advantage had been granted by contract to a private corporation the agreement would have been unenforceable, still in the circumstances here the contract is enforceable because the advantage is to the public instead of to any particular member thereof."

In *Willcox* v. *Consolidated Gas Co.* (212 U. S. 19) the rate fixed under a statute was eighty cents per thousand feet for gas supplied to general customers and seventy-five cents to the city of New York, and it was held that this was not an unreasonable discrimination. While the subject mainly considered was the validity of the statute, still in the discussion the court said: "Lastly, it is objected that there is an illegal discrimination as between the city and the consumers individually. We see no discrimination which is illegal or for which good reasons could not be given." (p. 54.) (See, also, *Interstate Commerce Commission* v. *Baltimore & Ohio R. R. Co.*, 145 U. S. 278.)

We think that according to the common law, as in force prior to recent legislation on the subject, the discriminations in question were neither unreasonable nor unjust as matter of law, because they were in favor of the public and because the favored classes were in a different situation and were surrounded by different circumstances from those affecting the general patrons of the plaintiff.

The judgment should be affirmed, with costs.

Cullen, Ch. J., Werner, Willard Bartlett, Hiscock and Chase, JJ., concur; Gray, J., not sitting.

Judgment affirmed.