## FRANK F. SEAMAN v. MINNEAPOLIS & RAINY RIVER RAILWAY COMPANY.

## J. C. SULLIVAN and Another v. MINNEAPOLIS & RAINY RIVER RAILWAY COMPANY.[1]

October 23, 1914.[2]

Nos. 18,666, 18,667—(196, 197).

**Case followed.**

1. Decision in Sullivan v. Minneapolis & R. R. Ry. Co. 121 Minn. 488, adhered to.

**Discrimination in freight rates.**

2. Contracts made prior to statutory rate regulation *held* no justification for downward departure from freight tariffs thereafter established, whereby

---

[1] Reported in 149 N. W. 134.          [2] April, 1914, term calendar.

plaintiffs, shippers who were charged with the legal rates for the same services, were discriminated against.

**Subsequent payment by shipper not a defense to action.**

3. The favored shipper's alleged payment to defendant of the difference between the discriminatory rate and the regular tariff, after the discriminations complained of had occurred, *held* no defense against the disfavored shipper's right to recover.

**Competitive business essential to recovery.**

4. Business competition is essential to a recovery of rate differentials by a shipper who is discriminated against, where no proof is made of damage other than the difference in the rates charged.

**Same — evidence.**

5. Evidence *held* to show business competition, between plaintiff Seaman and a favored shipper, within the rule requiring such competition where rate differentials are sought to be recovered, but the contrary was established in the Sullivan case.

**Computation of rate differentials.**

6. Rate differentials allowed as damages for discriminations in freight charges must be computed upon the basis of equal tonnage, but such discriminations should be considered with reference to a reasonable time before and after the disfavored shipment, and hence may arise from shipments on different dates.

**Interstate commerce.**

7. Under the facts disclosed, plaintiff Seaman's shipments were, to a considerable extent not precisely ascertainable, interstate commerce, to which the Federal rule of damages applied.

Two actions in the district court for Itasca county against defendant railway company to recover $4,500 and $5,366, respectively, for unlawful discrimination in freight rates. The facts are stated in the opinion. The cases were tried before Stanton, J., who at the close of the testimony in the Seaman case denied defendant's motion to dismiss the action and in each case denied defendant's motion to direct a verdict in its favor. The jury returned a verdict for $3,445.24 in favor of plaintiff Seaman and for $5,650.43 in behalf of plaintiffs Sullivan, Kolliner and Irvine, copartners under the name of J. J. J. Log & Cedar Co. From orders denying its motions for judgment in its favor notwithstanding the verdicts or for new trials, defendant

appealed. Reversed on both appeals, with directions to reduce the amount of the verdict in the Sullivan case to nominal damages.

*Powell & Simpson* and *Ernest C. Carman,* for appellants.

*George H. Spear,* for respondents.

PHILIP E. BROWN, J.

Separate actions to recover for unlawful discriminations in freight rates. After verdict for plaintiff in each, defendant appealed from orders denying its alternative motions for judgment or new trial.

The substance of the complaint in the Sullivan case is stated in the opinion (121 Minn. 488, 142 N. W. 3, 45 L.R.A.[N.S.] 612) sustaining it on demurrer, and like averments appear in the Seaman case, except that no claim is made therein for a recovery because of defendant's free hauling of lumbering supplies for others. The facts proved in the two cases are sufficiently similar to render joint consideration desirable.

1. Plaintiffs offered no evidence in either case of damages, other than the difference between the schedule rate paid by them and the less rate allowed the favored shipper. Since the decision in the Sullivan case, supra, the Supreme Court of the United States, in Pennsylvania R. Co. v. International Coal Mining Co. 230 U. S. 184, 33 Sup. Ct. 893, 57 L. ed. 1446, has held that payment by a carrier to one shipper of an unlawful rebate gives another shipper, not so favored, no right of action under the Interstate Commerce Act to recover like rebates on his shipments, nor any right to recover at all in the absence of other evidence of damages. We concede that this decision cannot be reconciled with ours. In the Sullivan case we are urged, on the one hand, to adhere to our determination there reached, both under the doctrine of the law of the case and on the ground that our decision is correct, while, on the other hand, we are asked to recede therefrom because its fallacy is demonstrated by the Federal case cited.

If defendant's contention be correct, the rule adopted should be abrogated. Defendant claims in this connection that, notwithstanding the statement to the contrary in the Sullivan decision, our rate-regulating statutes do provide a civil remedy for discrimination in rates, which was overlooked both by court and counsel on the former appeal,

and to substantiate this contention quotes the latter part of R. L. 1905, § 1986, as follows:

"Any common carrier or warehouseman who shall do or cause to be done any act in this chapter forbidden, or fail to do any act therein enjoined, or who shall aid or abet in any such act or neglect, shall be liable in damages to any person injured thereby; and in any action for such damages the plaintiff, if he recover, shall be allowed by the court a reasonable attorney's fee, to be taxed and allowed in addition to statutory costs."

But the first part of this section reading:

"Nothing in this chapter shall be construed to abridge or limit the duties and liabilities of common carriers or warehousemen, or the remedies now existing at common law or by statute, and the provisions of this chapter are in addition thereto," nullifies the force of the contention and clearly indicates not only that the legislature had in mind the existence of common-law liability and remedy, but intended to preserve them in addition to those created by the statute.

We have given the opinion in the Federal case such careful attention as is due all declarations emanating from that high court. The decision, however, was reached only after reargument, reverses the determinations of both the circuit court and the circuit court of appeals, and the opinion failed to convince Mr. Justice Pitney, as is evidenced by his vigorous dissent. It is also in conflict with the decisions of many other able courts. The law is not an exact science, differences of opinion are inevitable, and counsel have not heretofore claimed or conceded infallibility for the decisions of any court. Our previous convictions are strengthened by the fact that, in Texas & P. R. Co. v. Interstate Commerce Com. 162 U. S. 199, 233, 16 Sup. Ct. 80, 40 L. ed. 940, the court with which we differ declared, with reference to passenger rates:

"Nor is there any legal injustice in one person procuring a particular service cheaper than another," and again, in Parsons v. Chicago & N. W. R. Co. 167 U. S. 447, 17 Sup. Ct. 887, 42 L. ed. 231, one of the mainstays of the decision in 230 U. S. 184, 201, 33 Sup. Ct. 893, 57 L. ed. 1446, that where a reasonable freight rate is charged a person he has no right to complain because another is given a smaller

rate; though, in the case under discussion, conceding the holding of Interstate Commerce Com. v. Baltimore & O. R. Co. 145 U. S. 263, 275, 12 Sup. Ct. 844, 36 L. ed. 699, that prior to congressional action "the weight of authority in this country was in favor of an equality of charge to all persons for similar services."

Cogent reasons, we think, exist for not subscribing to the doctrines of the cases reported in 162 U. S. 199, 16 Sup. Ct. 666, 40 L. ed. 940, and 167 U. S. 447, 17 Sup. Ct. 887, 42 L. ed. 231, above referred to. Unless current history is to be belied, the theory of their pronouncements laid the foundation for monopolistic fortunes, the greatest ever known, built up through systems of rebates where, as in the present cases, the same persons were often stockholders in the railroad company and its favored shippers. We are not prepared either to admit the soundness of these declarations, as applied to public service corporations, or, with the knowledge since acquired of their effect, to incorporate the doctrine thereby promulgated into the law of this state. Nor are we impressed with the view that the penalties imposed on carriers for violations of rebating statutes constitute a panacea for rebating evils or are, as stated in 230 U. S. 206, 33 Sup. Ct. 893, 57 L. ed. 1446, "a terror to evil doers." Experience, we think, has proved the contrary, and, curiously, in the same case where this statement is made it appeared that defendant had "made a practice of paying rebates" both to plaintiff and other shippers.

The former opinion is adhered to.

2. Defendant's line is about 70 miles long and located wholly in Itasca county. It was originally constructed by the Itasca Lumber Co., an Illinois corporation owning tributary timber lands, as a private logging railway. In 1904 this corporation sold the road to defendant, a Minnesota railway corporation, which has since then operated it as a common carrier. When the sale was made it was agreed, as a part of the purchase price of the line, that defendant would thereafter transport the lumber company's logs at a specified rate, less than the tariff subsequently established, and at the same time, also as a part of the purchase price, defendant assumed a like contract theretofore existing between the Itasca Co. and the Deer River Co. Defendant seeks, under these contracts, to justify the discriminations

complained of; it being claimed that as such agreements were, when made, not contrary to statute or illegal, they have since continued lawful. The contention is not sustained.

"If one agrees to do a thing," says. Mr. Parsons, "which it is lawful for him to do, and it becomes unlawful by an act of the legislature, the act avoids the promise." Parsons, Cont. (9th ed.) 827.

In Louisville & N. R. Co. v. Mottley, 219 U. S. 467, 31 Sup. Ct. 265, 55 L. ed. 297, 34 L.R.A.(N.S.) 671, it was held that an agreement by an interstate carrier to issue annual passes for life, in consideration of release of a claim for damages, though entered into prior to Federal regulation, was thereby rendered unenforcible.

The proposition that our rate legislation rendered these contracts inoperative, we consider too clear to require further discussion or citation of authority.

3. It appeared that the stockholders of the Itasca Co. and the Deer River Co. were the same persons. In December, 1911, after the alleged discriminations complained of, the state brought action against this defendant to recover taxes claimed to have been evaded under the contracts mentioned. Thereafter, and after the pending actions were commenced, defendant paid the state a large sum in settlement of its demand, and in connection therewith the Itasca Co. claims it paid defendant the difference between the freight charges actually paid by it, and also by the Deer River Co., and the tariff rates, including those for transporting the lumbering supplies carried free for the Itasca Co. This transaction is said to be a complete defense to each of these actions. If defendant had, in good faith, extended credit for the amount of the established tariff freight charges, and payment had been made pursuant thereto, a different question would be presented. But here plaintiffs' rights of action, if any, for defendant's unlawful acts, accrued prior to such payment, and could not be defeated by the expedient resorted to. The question of the making of this alleged payment should not have been submitted to the jury.

4. In the Sullivan case, while the complaint alleged the relation of competitors as between plaintiffs and the Itasca Co., the proof negatived the averment, and it affirmatively appeared from the uncontradicted testimony of one of plaintiffs that the logs shipped, for which

reparation in freight charges paid by plaintiffs was sought, were not plaintiffs' but the property of the Northland Pine Co., and were logged and shipped by the former under a contract with the latter, wherein it was provided that payment for the services to be rendered was to be based upon a stipulated compensation plus the established tariff rate. A majority of the court hold that the favored and disfavored shippers must have been competitors, in order to sustain a recovery for substantial damages, competition being deemed an essential ingredient of each of plaintiffs' causes of action. Wherefore, the absence of such having been established, damages of the kind here sought were disproved; which adversely disposes of plaintiffs' claim of the applicability of the doctrine of the law of the case. Defendant, however, owed the duty of charging all shippers the schedule rate, and its violation entitled plaintiffs to nominal damages.

5. Defendant's claim that business competition between plaintiff and the favored shipper was not established in the Seaman case cannot be sustained in point of fact; for both shippers were dealing in forest products in the same general market, shipping from practically the same place, and must be said to have been competitors within any reasonable meaning of the term.

However, on this record, defendant's claim that Seaman's shipments were, to a considerable extent, not precisely ascertainable interstate commerce, is sustained. While it appeared that no joint rates had been established by defendant, whose line was wholly within the state, and the Great Northern Railway Co., the connecting interstate carrier, and that cars going beyond defendant's terminal at Deer River were rebilled by the shipper over the latter road, the charges being paid to Deer River, yet the tracks of the two companies were connected, and a considerable portion of the shipments involved was loaded on defendant's line at the point of origin of the freight, in cars belonging to the Great Northern Co., obtained upon the shipper's requisition, for the purpose of transporting the products to predetermined destinations in other states, to which they went through without reloading. These facts bring the shipments in question within the holding of Texas & N. O. R. Co.

v. Sabine Tram Co. 227 U. S. 111, 33 Sup. Ct. 229, 57 L. ed. 442, and render applicable, to the exclusion of our own, the Federal rule of damages.

6. Rate differentials allowed as damages for discrimination in freight rates must be computed upon the basis of equal tonnage; but discriminations should be considered not merely with reference to the precise time of shipments, but to a reasonable time before and after the disfavored shipment; otherwise, if a discriminatory rate were allowed a shipper on shipments completed in July, another shipping in June or August would be remediless.

Orders reversed on both appeals, with directions to reduce the amount of the verdict in the Sullivan case to nominal damages.

On November 21, 1914, the following opinion was filed:

PER CURIAM:

In applications for reargument plaintiffs call attention, among other things, to the following statement in the opinion: "Rate differentials allowed as damages for discrimination in freight rates must be computed upon the basis of equal tonnage;" which it is claimed does not furnish a workable rule in either case, because as to some of the products they were charged full tariff rates on certain items and an arbitrary rate as to each unit of others, while the favored shipper received the same service at so much per car, which was less than the rates charged plaintiffs.

The applications are denied. We deem it advisable to say, however, that by "equal tonnage" it was not intended to always require proof of equal poundage or arbitrarily to establish weight as the standard of comparison, but merely to limit the recovery to the differentials on the same amount of service.