## MARY CALLENDER v. NORTHERN STATES POWER COMPANY.[1]

November 30, 1934.

No. 30,038.

[1]Reported in 257 N. W. 512.

A. *William Groth, Stearns, Stone & Mackey, Kellogg, Morgan, Chase, Carter & Headley,* and *Cummins, Hagenah & Flynn,* for appellant.

*Reuther & Sullivan* and *John P. Moylan,* for respondent.

*John L. Connolly* and *H. J. Flynn,* for city of St. Paul, filed a brief on behalf of the contention of respondent.

*HOLT, Justice.*

Defendant appeals from the order overruling its demurrer to the amended complaint. The substance of the allegations of the pleading may be stated thus:

Plaintiff is a taxpayer of the city of St. Paul, and the action is brought in behalf of all the taxpayers thereof to recover the damages sustained by the city from the unjust discriminatory rates which the city has paid defendant for the electric current furnished by it to the city. Defendant is a public service corporation, organized and doing business under the laws of this state, and, during the time involved, has held an exclusive franchise from the city to install its poles, wires, and conduits in the streets and alleys thereof and to transmit electric current for light, heat, and power to its inhabitants. During the time referred to the ordinance granting the franchise provided that defendant should furnish electric current without discrimination. The period for which illegal discrimination is claimed runs from January 1, 1923, to October 1, 1930, during which the city paid defendant for the current furnished $2,092,072.77. The amount so paid was not in excess of the maximum rates prescribed by the city council of the city of St. Paul, under the regulatory powers conferred by the city charter; but it is alleged that it was $1,067,922.84 in excess of what it would have been if the rates charged had been no more than defendant, during the same period, charged a number of named users of electric current in and around the city under similar or more favorable conditions. Among the mentioned more favored customers or users

are hospitals, colleges, some railroad companies, and business concerns. It is alleged that no one of the named more favored users of the electric current furnished was a competitor of the city. Before suit plaintiff duly demanded that the city council of the city of St. Paul bring an action to recover this sum of $1,067,922.84, but the city council refused.

The action is for damages for unjust discrimination. It is not claimed that the city paid a higher rate than the current was worth. It is conceded that the amount paid by the city was not in excess of the maximum rate fixed by the city council—the body authorized to fix and regulate rates of public service corporations operating under a franchise within the territorial limits of the city. It must therefore be taken as true that the city has paid no more than a just and reasonable rate for the current furnished. It has paid no more than the electricity furnished was worth. Hence there can be no recovery for money had and received, or for overpayment, or as reparation. But for unlawful and unjust discrimination by a public service corporation a patron thereof has a cause of action in tort upon allegation and proof of the damage or loss he has sustained therefrom. This is conceded by defendant. The two decisions of this court in Sullivan v. M. & R. R. Ry. Co. 121 Minn. 488, 142 N. W. 3, 45 L.R.A.(N.S.) 612, and 127 Minn. 180, 149 N. W. 134, lay down the rule that when the one claiming damages for unlawful discrimination alleges and proves that he has paid a certain rate, whether the lawful rate or not, and a competitor in business has paid a lower rate for the same service, then the difference in rate is the measure of his loss or damage. Tested by that rule, there can be no recovery, under the complaint here attacked, for it alleges that no one of defendant's patrons who were granted a lower rate was a competitor of the city. The learned court below, in overruling defendant's demurrer, was of the opinion that the two decisions of this court in the case mentioned were not consistent and that the last one was logically wrong. We are convinced that there ought not to be any extension of the rule that the differential in rates measures the loss or damage of a patron of a public utility only in the case where a lower rate has been granted to his com-

petitor. There is eminent authority for the proposition that one who claims damages of a public service corporation because of unlawful discrimination in rates must plead and prove not only unjust discrimination but the actual loss or injury he sustained as a direct result of granting a lower rate to others than the rate exacted from him. Pennsylvania R. Co. v. International C. M. Co. 230 U. S. 184, 33 S. Ct. 893, 57 L. ed. 1446; Homestead Co. v. Des Moines Elec. Co. (C. C. A.) 248 F. 439; New York Tel. Co. v. Siegel-Cooper Co. 137 App. Div. 158, 121 N. Y. S. 1033; *Id.* 202 N. Y. 502, 96 N. E. 109, 36 L.R.A.(N.S.) 560; Hoover v. Pennsylvania R. Co. 156 Pa. 220, 27 A. 282, 22 L. R. A. 263, 36 A. S. R. 43; Cock v. Marshall Gas Co. (Tex. Civ. App.) 226 S. W. 464; Lilly Co. v. N. P. Ry. Co. 64 Wash. 589, 117 P. 401.

A practical consideration is against facilitating proof of damages in actions of this sort beyond the bounds, set by the Sullivan decisions. A public service corporation, intentionally or by mistake or otherwise, may have rendered one of its patrons free service, or service at reduced rate for some reason that to it appeared just and reasonable. If every patron of the corporation upon ascertaining that fact should be entitled to recover as damages all he has paid during a period of years in excess of the rate charged some other patron, though he has received full value for all he has paid and has suffered no personal loss because of the discrimination, the damages so awarded him become more of a penalty against the corporation than a compensation for loss sustained. It can be readily seen that the penalties might be so large as to wipe out the corporation and all the interests of its stockholders. This might occur although the corporation had not obtained from any patron more than the maximum rate allowed by law; hence no more than the reasonable value of the service furnished. In Boerth v. Detroit City Gas Co. 152 Mich. 654, 665, 116 N. W. 628, 633, 18 L.R.A.(N.S.) 1197, the court said the granting of unlawful favors by a public service corporation to one or more of its patrons "does not give a right of action to every member of the community. That is a grievance to be redressed by the public. On principle it cannot be redressed by an individual unless he is specially aggrieved thereby."

It is not alleged that the city of St. Paul was specially aggrieved; it had paid no more than the rate its city council established; and no one who paid a less rate was in competition with the city. Statutes, franchise ordinances, and the common law forbidding unjust and unlawful discriminations by public service or utility corporations are to be observed and enforced. For certain infractions modes of redress are suggested in St. Paul B. & S. Co. v. St. Paul G. L. Co. 130 Minn. 71, 153 N. W. 262, L. R. A. 1918A, 384, Ann. Cas. 1916B, 286.

Cases like the one at bar and those hereinbefore cited are to be distinguished from reparation actions where recovery is based upon the ground that the service corporation has received an excessive and unreasonable rate. Examples of reparation suits are Bell Lbr. Co. v. G. N. Ry. Co. 135 Minn. 271, 160 N. W. 688; Bilton M. T. Co. v. United Illuminating Co. 110 Conn. 417, 148 A. 337, 67 A. L. R. 814; Southern Pac. Co. v. Darnell-Taenzer Lbr. Co. 245 U. S. 531, 38 S. Ct. 186, 62 L. ed. 451. The learned court below, in two exhaustive memoranda, stresses Cook & Wheeler v. C. R. I. & P. Ry. Co. 81 Iowa, 551, 46 N. W. 1080, 9 L. R. A. 764, 25 A. S. R. 512, and Union Pac. Ry. Co. v. Goodridge, 149 U. S. 680, 13 S. Ct. 970, 977, 37 L. ed. 986. The first mentioned case was to recover excessive charges. Because of secret rates and rebates given competitors in shipments of stock, the court concluded that the carrier considered the reduced rates reasonable; hence the amount paid by the plaintiff above such reduced rates to other shippers was in excess of reasonable compensation. The Goodridge case involved a state statute similar to the federal interstate commerce act prohibiting discrimination between shippers and permitting the injured shipper to recover triple damages. That case also involved discrimination between competitors, for on the last page of the opinion, relating to damages, we read [149 U. S. 697]:

"Plaintiffs' evidence had shown that the Marshall Company had been receiving a rebate upon all coal transported by it to Denver, which was not allowed to its competitors in business, and the damages sustained by the plaintiffs were measured by the amount of such rebate, which should have been allowed to them."

This accords with the rule stated and applied in the Sullivan decisions.

Since we reach the conclusion that the amended complaint fails to state facts authorizing a recovery for more than nominal damages, the demurrer should end the case, and it is not necessary to decide whether plaintiff may maintain the action in behalf of the city.

Order reversed.

*DEVANEY, Chief Justice,* and *I. M. OLSEN, Justice,* took no part.

