220        KENTUCKY REPORTS.    [Vol. 138.

Ill. Cent. R. R. Co. v. Henderson Elevator Co.

CASE 30—ACTION BY THE HENDERSON ELEVATOR COM-
    PANY AGAINST THE ILLINOIS   CENTRAL   RAIL-
    ROAD COMPANY—May 4, 1910.

## Ill. Cent. R. R. Co. v. Henderson Elevator Co.

Appeal from Henderson Circuit Court.

J. W. Henson, Circuit Judge.

Judgment for plaintiff, and defendant appeals.—
Affirmed.

1.  Carriers—Rates—Approval by Interstate Commerce Commis-
    sion.—Where a carrier makes its schedule of rates and files
    them with the Interstate Commerce Commission, which ap-
    proves and promulgates them as required by the Interstate
    Commerce Act Feb. 4, 1887, c. 104, 24 Stat. 379 (U. S. Comp.
    St. 1901, p. 3154), the carrier and shipper must observe them,
    and any known departure therefrom will subject them to a
    fine.
2.  Carriers—Failure to Post Freight Rates—Liabilities.— Where
    a railroad company failed to post a schedule of tariff rates
    as required by Interstate Commerce Act Feb. 4, 1887, c. 104,
    section 6, 24 Stat. 380 (U. S. Comp. St. 1901, p. 3156), as
    amended by Act June 29, 1906, c. 3591, section 2, 34 Stat. 586
    (U. S. Comp. St. Supp. 1909, p. 1153), for the use of the pub-
    lic in every depot where passengers or freight are received
    for transportation, and a shipper in ignorance of such sched-
    ule, relying upon a schedule previously in force, contracted
    for shipment of grain, to his damage, he could recover of
    the railroad company therefor at common law.
3.  Courts—Jurisdiction—Remedy in State Court.—Under Inter-
    state Commerce Act Feb. 4, 1887, c. 104, section 9, 24, Stat.
    382 (U. S. Comp. St. 1901, p. 3159), providing that any person
    damaged by a carrier subject to the provisions of the act
    may either make complaint to the Interstate Commerce Com-
    mission, or may sue for the damages for which such carrier
    may be liable under the act, in any district or circuit court
    of the United States of competent jurisdiction, and section

22, providing that nothing in the act shall abridge or alter
the remedies existing at common law or by suit, but that the
provisions of the act shall be in addition to such remedies,
a shipper so damaged could, as at common law, sue the car-
rier in a state court for the damages sustained; such action
not conflicting with the powers granted by the Interstate
Commerce act to the Interstate Commerce Commission, but
tending to aid the commission in the enforcement of the law.

TRABUE DOOLAN & COX, JOHN C. WORSHAM and J. L.
DORSEY for appellant.

CLAY & CLAY for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

This appeal is from a judgment of the Henderson
circuit court for $1,960 damages alleged to have been
sustained under the following circumstances:  Ap-
pellee was at the time of the alleged injury, and is
now, a corporation created and doing business under
the laws of the state of Kentucky, and was then, and
is now, in the business of buying, handling, and ship-
ping grain. Appellant is a corporation created under
the laws of Illinois, and operates a line of railroad
through the states of Illinois, Kentucky, and thence
south, through other states, to the city of New Or-
leans. La.  Its line of road passes through the city
and county of Henderson, Ky.  Appellee alleges that
appellant is a common carrier of freight and passen-
gers for hire and is engaged in interstate commerce;
that on August 20, 1906, appellant issued its tariff
rate fixing the prices to be charged for shipping corn
from Indiana and Illinois points through Henderson,
Ky., to New Orleans, La., for export, and also its
tariff of rates from points in Indiana and Illinois to
Henderson, Ky., there to be reconsigned to New Or-
leans for export; that the rate so prescribed was 12
cents per 100 pounds and went into effect September

1, 1906; that subsequently appellant issued a supplement to this tariff reducing the rate on corn shipped from points in Indiana and Illinois to Henderson, Ky., and Evansville, Ind., there to be reconsigned to New Orleans for export, from 12 cents to 10 cents per 100 pounds. This supplement went into effect September 6, 1906. It was proved that under both tariff rates, all shippers in Henderson, Ky., were authorized and permitted to ship corn from the points in Indiana and Illinois shown on the tariff rate to Henderson, Ky., paying the local freight from these points to Henderson, and, if reconsigned from Henderson to New Orleans for export within 180 days after its receipt in Henderson, the shipper would be given the benefit of the through rate of 10 cents per 100 pounds from the points in Indiana and Illinois to New Orleans for export. It appears that this tariff rate was approved by the Interstate Commerce Commission, was posted and put into effect as required by the act of Congress regulating interstate commerce. Appellant, as was its custom, furnished appellee with a copy of this tariff schedule soon after it was established. It appears that appellee was ignorant of any change in this tariff rate, until the date hereinafter named, and about the first of September, 1907, it purchased at these points in Indiana and Illinois a large quantity of corn for the purpose of resale. It had received a proposition from Hall-Baker Grain Company, of New Orleans, to purchase 100,000 bushels of corn to be delivered in New Orleans. To enable it to make terms of sale, it took the tariff rate which it had been furnished to the freight office of appellant in the city of Henderson, Ky., the place from which it made its shipments and where appellant was required to keep its tariff

rate sheets posted, to ascertain if the 10-cent rate had been suspended or changed. The agent informed him that none had been made, and he, with the agent, examined carefully to see if any other schedule had been posted, but could find none. They then examined the files in the office to see if any had been furnished the agent and not posted, and none could be found, and, for the purpose of ascertaining with more certainty whether any change had been made in this 10-cent rate up to that time, he requested appellant's agent in Henderson to make inquiry of the proper authorities of his company as to whether the 10-cent rate was still in force. These examinations and this request were made on September 6, 1907. In compliance with appellee's request, appellant's agent in Henderson did write to its commercial agent in Evansville, Ind., and received an answer from him September 9, 1907, stating that the rate on such shipments was 10 cents per 100 pounds; that no change had been made in the tariff rate referred to, and appellant's agent in Henderson furnished appellee a copy of that letter. Having been furnished with information to the effect that the 10-cent rate had not been altered in any way, appellee answered Hall-Baker Grain Company's telegram stating a sale price of 100,000 bushels of corn to be delivered in New Orleans, freight prepaid. Appellee immediately informed the appellant's agent in Henderson of this trade, which the agent booked and agreed to transport the corn at the rate named. After this trade had been made, and appellee had obligated itself to ship the 100,000 bushels of corn, it received, on September 19, 1907, a notice from appellant company that the tariff rate on such shipments had been increased from 10 cents to 13½ cents per 100 pounds,

and that such increase had been made in the schedule issued February 28, 1907, and went into effect April 1, 1907, and, notwithstanding, appellee had sold its corn on a basis of a 10-cent freight rate per 100 pounds, it was required when it shipped to pay 13½ cents per 100 pounds. Appellee alleged and proved that it would not have made the sale of the corn at the price it did if it had known the tariff rate had been increased; that its loss on account of the increase was the amount named in the judgment; that its loss was not occasioned by any neglect or failure on its part, but was due solely to the negligence of appellant's agents and servants in failing to file with its local agent or to post, as required, in its depot or station in Henderson, or in any other place in that city where freight was received for transportation, any printed copy or copies of its schedule of rates changing its prior schedule furnished appellee, and in failing to give its local agent any notice or information that the rates had been changed. These facts were shown by appellee's president and appellant's agent in Henderson. The only witness introduced by appellant was its mail clerk in charge of the distribution of its tariff rates in Memphis, Tenn. He stated, in substance, that he inclosed a tariff schedule in an envelope for Henderson, Ky., and placed it in a "bin" assigned to railroad mail and to which other employes had access. He did not put a stamp on the envelope and put it into a government mail box.

Appellant contends that the judgment should be reversed because the state court had no jurisdiction to try the action; that the Interstate Commerce Commission should have been applied to and asked to remedy the wrong, if any; that to uphold judg-

ments obtained under circumstances like those surrounding this case would have the effect to render the act regulating interstate commerce ineffectual and nugatory. It is well established by the opinions of the United States Supreme Court that when a common carrier makes its schedule of rates and files them with the Interstate Commerce Commission, and that body approves and promulgates them as the act requires, the parties, the carrier and shipper, must observe them, and any known departure therefrom will subject them to a fine of not less than $1,000, nor more than $20,000 for each offense. Plaquemines Tropical Fruit Co. v. Henderson, 170 U. S. 511, 18 Sup. Ct. 685, 42 L. Ed. 1126; Western Union Telegraph Co. v. Call Pub. Co., 181 U. S. 92, 21 Sup. Ct. 561, 45 L. Ed. 765; T. & P. Ry. Co. v. Mugg, 202 U. S. 242, 26 Sup. Ct. 628, 50 L. Ed. 1011; T. & P. Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553; Southern Ry. Co. v. Tift, 206 U. S. 428, 27 Sup. Ct. 709, 51 L. Ed. 1124; Armour Packing Co. v. U. S., 209 U. S. 56, 28 Sup. Ct. 428, 52 L. Ed. 681. This does not apply to the instant case. There was no deviation from the rates as approved by the commission which took effect April 1, 1907. The increased rate was paid by appellee as the act required, and appellee's action was not brought to recover the amount paid above the 10 cents or for an unreasonable charge of freight rates. Its action is founded upon the idea that it was damaged by appellant on account of its failure to perform a manifest duty required of it by the act of Congress in failing to post in its office in Henderson, Ky., its changed tariff rate which took effect April 1, 1907, by which failure and wrong it was induced to enter into a contract with a third party to its damage.

The questions are: ·Can an action of this character be maintained in a state court? Would the enforcement of a judgment like the one in the case at bar have the effect to render nugatory the act with reference to interstate commerce, or the powers of the commission created thereby? So closely related are these questions that it is impossible to consider one without at the same time stating facts and reasons applicable to the determination of the others. That part of section 9 of the United States Compiled Statutes of 1901 (page 3159), applicable to the question is as follows: "That any person or persons claiming to be damaged by any common carrier subject to the provisions of this act may either make complaint to the commission as hereinafter provided for, or may bring suit in his or their own behalf for the recovery of the damages for which such common carrier may be liable under the provisions of this act, in any district or circuit court of the United States of competent jurisdiction." It will be observed that this section only gives a person the privilege of seeking aid of the commission or bringing an action in a District or Circuit Court of the United States. That part of section 22 of the same statutes, germane to the question, is: "Nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute but the provisions of this act are in addition to such remedies." It is certain that at common law a party could bring an action in a state court to redress a wrong such as described in the petition in this case. In section 132, Bishop on Noncontract Law, we find the following: "Whenever the common law, a statute, a municipal by-law, or any other law imposes on one a duty, if of a sort affecting the public within

the principles of the criminal law, a breach of it is indictable, and a civil action will lie in favor of any person who has suffered specially therefrom. Or, if the matter of the law involves only the interests of individuals, any one who has received harm from another's disobedience may have his suit against him for damages." This is exactly in point. It is shown by appellee in this case that his damage resulted, not from an over or excessive charge of freight or a charge in excess of the contract price, but from the failure on appellee's part to perform a duty enjoined upon it by the act of Congress, to wit, a failure to post the schedule of tariff rates as required by that act, which is as follows: "Such schedule shall be plainly printed in large type, and copies for the use of the public shall be kept posted in two public and conspicuous places in every depot, station, or office of such carrier where passengers or freight, respectively, are received for transportation, in such form that they shall be accessible to the public and can be conveniently inspected." A part of section 6 as amended by act of the Fifty-Ninth Congress (Act June 29, 1906, c. 3592, section 2, 34 Stat. 586 [U. S. Comp. St. Supp. 1909, p. 1153]). We are unable to see why a shipper who has sustained damages by reason of a common carrier's failure to comply with this act cannot maintain an action for redress in a state court. He does not, in doing so, conflict with, abridge, or alter in any way the powers granted by the act to the Interstate Commerce Commission, nor does he in any way violate the provisions of the act; but, to the contrary, he tends to aid the commission in the proper enforcement of the law by making the common carrier more prompt in complying with the provisions of the act.

The case of T. & P. Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, was a case brought and prosecuted in a state court of Texas for the recovery of alleged unreasonable charge of freight; but the rate collected was the rate stated in the schedule filed with and approved by the Interstate Commerce Commission and published as required by the act regulating interstate commerce, and which it was the duty of the common carrier under the law to enforce against the shipper. The court in that case, in considering the matter of juris- diction of the state court and its right to enforce a return of the money collected above a reasonable rate, said: "In testing the correctness of this proposition, we concede that we must be guided by the principle that repeals by implication are not favored, and, indeed, that a statute will not be construed as taking away a common-law right existing at the date of its enactment, unless the result is imperatively required; that is to say, unless it be found that the pre-existing right is so repugnant to the statute that the survival of such right would in effect deprive the subsequent statute of its efficacy; in other words, render its provisions nugatory." The court in that case, in view of the fact that the carrier only collected from the shipper the rate fixed in the schedule as established and published after approval by the commission, determined that the court did not have jurisdiction to pass upon that question until the matter was brought to the attention of the commission for a change of the rate. If any such proceeding was allowed, shippers who instituted actions and sustained them would be able to ship for a less rate than other persons and would render the purpose of the act ineffectual. The court said: "For if, without

Ill. Cent. R. R. Co. v. Henderson Elevator Co.

previous action by the commission, power might be exerted by courts and juries generally to determine the reasonableness of an established rate, it would follow that unless all courts reached an identical conclusion a uniform standard of rates in the future would be impossible, as the standard would fluctuate and vary, dependent upon the divergent conclusions reached as to the reasonableness by the various courts called upon to consider the subject as an original question.'' In concluding its opinion in that case, the court said: ''Concluding, as we do, that a shipper seeking reparation predicated upon the unreasonableness of the established rate must, under the act to regulate commerce, primarily invoke redress through the Interstate Commerce Commission, which body alone is vested with power originally to entertain proceedings for the alteration of an established schedule, because the rates fixed therein are unreasonable, it is unnecessary for us to consider whether the court below would have had jurisdiction to afford relief if the right asserted had not been repugnant to the provisions of the act to regulate commerce.'' As will be seen, the question before us was not before the court in that case, nor in the case of T. & P. Ry. Co. v. Cisco Oil Mill, 204 U. S. 449, 27 Sup. Ct. 358, 51 L. Ed. 562. The court closed its opinion in that case with these words: ''Whether by a failure to post an established schedule a carrier became subject to penalties provided in the act to regulate commerce, or whether, if damages had been occasioned to a shipper by such omission, a right to recover on that ground alone would have obtained, we are not called upon in this case to decide.''

From these authorities we conclude that the Supreme Court recognized the right of a shipper to

enforce, in a state court, a claim for damages that is not repugnant to the statutes, and the enforcement of which would not deprive the statutes of their efficacy. We further conclude that the enforcement of appellee's claim in the case at bar would not have the slightest tendency in either of those respects; but, on the other hand, it is consonant with the enforcement of the act and will aid the commission with regard thereto.

For these reasons, the judgment of the lower court is affirmed.