St. Louis, etc., R. Co. *v.* J. S. Patterson Constr. Co.—181 Ind. 304.

lants' motion for a new trial, with leave to amend the pleadings, if desired, by inserting the eighth codicil, and other proper amendments, and for further proceedings in accordance with this opinion.

NOTE.—Reported in 104 N. E. 505. See, also, under (1) 40 Cyc. 1360; (2) 40 Cyc. 1370; (3, 4) 40 Cyc. 1220; (5) 40 Cyc. 1219. As to codicils, what they are and their construction and effect, see 55 Am. Dec. 126.

## St. Louis Southwestern Railway Company *v.* J. S. Patterson Construction Company.

[No. 21,784.  Filed March 12, 1914.]

1. PLEADING. — *Complaint.* — *Presumptions.* — Where a complaint against an interstate carrier for overcharges declared on the breach of a verbal contract in regard to rates, it must be presumed in the absence of a contrary averment, that the rates charged were those included in the tariffs published and filed with the Interstate Commerce Commission. p. 307.

2. COURTS.—*Jurisdiction of State Courts.—Construction of Interstate Commerce Act.*—A State court has no jurisdiction in an action to recover overcharges, in which it is alleged that an interstate carrier having a published rate of one cent per hundred pounds with a minimum charge of $5 per car, furnished cars with a carrying capacity of 40,000 pounds when plaintiff had demanded cars with a capacity of 50,000 pounds, and that plaintiff was thereby overcharged because the cars of 40,000 pounds capacity would not earn the minimum charge of $5 per car at the published rate of one cent per hundred pounds, since the action involves a construction of the Interstate Commerce Act, and a determination of questions that, under that act, are matters for the Interstate Commerce Commission. p. 308.

3. COURTS.—*Jurisdiction of State Courts.—Questions Arising from Interstate Commerce.—Distribution of Cars.*—State courts have no jurisdiction to determine the question of overcharges by a carrier through its distribution of cars used in interstate traffic. p. 313.

From Superior Court of Marion County (70,185); *Clarence E. Weir,* Judge.

Action by the J. S. Patterson Construction Company against the St. Louis Southwestern Railway Company.

From a judgment for plaintiff, the defendant appeals.
*Reversed.*

*Miller & Dowling, Delos A. Alig, S. H. West* and *Roy
F. Britton,* for appellant.

*James W. Noel* and *Everett B. Kurtz,* for appellee.

MORRIS, C. J.—Appellee sued appellant to recover alleged
overcharges. The complaint is in eight paragraphs, the
first of which alleges, among other things, that appellee,
an Illinois corporation, was engaged, in 1902 and subse-
quently, in constructing a bridge over the Mississippi River
near Thebes, Illinois; that in September, 1902, it verbally
contracted with appellant, an interstate carrier, for cars,
to carry appellee's construction material from Grays Point,
in Missouri, to the tracks of the Chicago, etc., R. Co., in
Illinois, and to transport such material between said points;
that it was agreed that the cars to be furnished should have
at least 50,000 pounds carrying capacity, and the rental
therefor should be 25 cents per car, per day, with a freight
rate of one cent per hundred pounds of material trans-
ported; that the switching charge of the Chicago, etc., R.
Co., was $2 per car, regardless of capacity; that between
September, 1902, and December, 1903, appellant furnished
and appellee used 700 cars, with a carrying capacity of
only 40,000 pounds; that appellee was compelled to use
the cars furnished; that appellant charged appellee $5 for
transportation of each car, and 25 cents for rental therefor,
which appellee paid under protest; that appellee was com-
pelled to and did pay said switching charges; that because
of said facts, appellee was overcharged the sum of $1.46,
for each car, amounting in all to $1,022, for which judg-
ment is demanded.

The second paragraph alleges an oral agreement for ten
60,000 pound carrying capacity cars for transporting sand
between Idalia and Grays Point, Missouri, at an agreed

306 SUPREME COURT OF INDIANA,

St. Louis, etc., R. Co. v. J. S. Patterson Constr. Co.—181 Ind. 304.

rate of $13 per car; that cars of 40,000 pounds capacity only were furnished, for which appellant charged $13 each, which charges were paid under protest; that appellant also charged and collected twice for one of the cars. Judgment is demanded on this paragraph for $56.30. The third paragraph was dismissed. The fourth paragraph alleges an overcharge of $2.50 per car for 70 cars transported between Grays Point and another place in Missouri. Appellee concedes that no evidence was offered in support of the fifth paragraph.

The sixth declares on overcharges for car rentals. It avers the same facts set out in the first paragraph, in relation to the contract, and further alleges that at a certain time, it notified appellant not to deliver in the future more than 14 cars; that notwithstanding said notice appellant thereafter continued to deliver cars which were not ordered or used, and charged appellee $98.25 for car rental on such unused cars, which charge appellee paid under protest. The seventh paragraph alleges that in September, 1902, appellant issued and published a certain tariff designated as No. 2951, applying on crushed rock, transported from Grays Point, Missouri, to Thebes, Illinois, at the following rate: "One cent per 100 pounds, with a minimum charge of $5 per car, minimum weight, carrying capacity of the cars, but cars must not be loaded in excess of 10 per cent above their carrying capacity"; that a copy of this tariff was filed with the Interstate Commerce Commission; that said rate was in effect from September, 1902, to December, 1904, during which time appellee was compelled to ship over said route great quantities of crushed rock; that appellee demanded cars of a carrying capacity of 50,000 pounds each, but was refused, and instead thereof was furnished cars of a capacity of 40,000 pounds only; that the switching charge of the Chicago, etc., R. Co., was $2 per car, regardless of carrying capacity; that appellant demanded and collected of appellee the sum of $7.25 for each car transported, which included

St. Louis, etc., R. Co. *v.* J. S. Patterson Constr. Co.—181 Ind. 304.

a minimum charge of $5 per car, and the switching charge of $2, and car rental of 25 cents; that 700 cars were used; that by reason of the capacity of the cars furnished, appellee was overcharged $1.46 per car, which overcharge was paid under protest. The eighth paragraph was substantially the same as the seventh.

The court overruled demurrers to each paragraph. Appellant answered in two paragraphs, the first of which was a general denial. The second is addressed to the first, seventh and eighth paragraphs of complaint, and alleges that the shipments were made under certain tariffs filed with the Interstate Commerce Commission; that the reasonableness of the rates was never passed on by the commission, and said rates have remained in full force and effect, and the charges made and collected were in exact conformity with such published tariffs. The cause was tried by a jury which returned a verdict for appellee in the sum of $1,000. Appellant's motion for a new trial was overruled.

The principal contention here involves a consideration of the question of the court's jurisdiction over the cause of action sued on in the first, seventh and eighth paragraphs of complaint. The appellant insists that the court had no jurisdiction to determine such cause, for the reason that the Interstate Commerce Act of 1887, as amended, vests exclusive authority to determine such matters in the Interstate Commerce Commission, which act was passed by Congress in pursuance of §8, Art. 1, of the Constitution of the United States; that said act of Congress is the supreme law of the land, under §2, Art. 6, of the Federal Constitution, and the courts of Indiana are thereby deprived of any power to determine appellant's rights in the premises.

While the first paragraph of complaint declares on the breach of a verbal contract in regard to rates, appellant claims that it must be presumed, in the absence of

1. contrary averment, that the rates charged were those included in the tariffs published and filed with the

Interstate Commerce Commission, and consequently the court erred in overruling the demurrer to that paragraph. *Gulf, etc., R. Co.* v. *Hefley & Lewis* (1895), 158 U. S. 98, 15 Sup. Ct. 802, 39 L. Ed. 910. We are of the opinion that this contention must prevail.

Did the Interstate Commerce Commission have exclusive jurisdiction to determine the issues joined on the seventh and eighth paragraphs? Counsel for appellee claim 2. that here there is no controversy over the justice, reasonableness or fairness of the published rates; that state courts have jurisdiction over causes arising out of overcharges, or misapplication of lawful rates; that a fair construction of the published rate of one cent per hundred pounds, with a minimum charge of $5 per car, prohibits the exaction of $5 per car where the car's carrying capacity is not sufficient to enable it to earn $5 at a rate of one cent per 100 pounds; that any other construction of the published tariff "would permit of flagrant discrimination between shippers." Appellant contends that this court judicially knows that interstate railroads cannot keep their own equipment at all times upon their own lines, and under their own control, and could not guarantee that it might at all times have cars of a given capacity; that a $5 minimum charge per car was reasonable, and that appellant's construction of the rate was the only proper one; that in any event, appellant's regulation and practice of charging $5 per car, regardless of capacity, if claimed to be unlawful, was for the determination of the commission, under §§6 and 15 of the Interstate Commerce Act. In its brief, appellee cites *Illinois Cent. R. Co.* v. *Henderson Elevator Co.* (1910), 138 Ky. 220, 127 S. W. 779. When appellee's brief was filed that case was pending, on appeal, in the Supreme Court of the United States, and has since been decided. The action was commenced in a state court of Kentucky by filing a complaint which alleged that the interstate carrier had a lawfully established rate, duly posted at its depot at a

named city; that subsequently a higher rate was substituted therefor, and defendant negligently failed to post it; that plaintiff, in ignorance of such increase of rate, and relying on the posted rate, purchased corn for interstate shipment, and was compelled to pay the increased rate. Judgment was demanded for damages for negligence in failing to post the new rate. The Court of Appeals of Kentucky held that the state court had jurisdiction of the action because there was no controversy over rates, or the reasonableness thereof, and plaintiff had paid the increased rate without objection, and sued only for damages for negligence in failing to post the new rate. In reversing the judgment, in *Illinois Cent. R. Co.* v. *Henderson Elevator Co.* (1913), 226 U. S. 441, 33 Sup. Ct. 176, 57 L. Ed. 290, the Supreme Court of the United States said: "It is to us clear that the action of the court below in affirming the judgment of the trial court and the reasons upon which that action was based were in conflict with the rulings of this court interpreting and applying the act to regulate commerce. *New York, etc., R. Co.* v. *United States* [1909], 212 U. S. 500, 504, [53 L. Ed. 624, 627, 29 Sup. Ct. 309]; *Texas, etc., R. Co.* v. *Mugg & Dryden* [1906], 202 U. S. 242, [50 L. Ed. 1011, 26 Sup. Ct. 628]; *Gulf, etc., R. Co.* v. *Hefley & Lewis* [1895], 158 U. S. 98, [39 L. Ed. 910, 15 Sup. Ct. 802]. That the failure to post does not prevent the case from being controlled by the settled rule established by the cases referred to is now beyond question. *Kansas City, etc., R. Co.* v. *Albers Commission Co.* [1912], 223 U. S. 573, 594 (a), [56 L. Ed. 556, 567, 32 Sup. Ct. 316]."

In *Texas, etc., R. Co.* v. *Abilene Cotton Oil Co.* (1909), 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075, it was held that a shipper could not maintain an action in a state court against an interstate carrier to recover damages because of the exaction of an unreasonable rate, where the latter was promulgated by the carrier under the Interstate Commerce Act, and has not been found unreason-

310     SUPREME COURT OF INDIANA,

St. Louis, etc., R. Co. *v.* J. S. Patterson Constr. Co.—181 Ind. 304.

able by the commission. The opinion concludes as follows: "Concluding as we do, that a shipper seeking reparation predicated upon the unreasonableness of the established rate must, under the act to regulate commerce, primarily invoke redress through the Interstate Commerce Commission, which body alone is vested with power originally to entertain proceedings for the alteration of an established schedule, because the rates fixed therein are unreasonable, it is unnecessary for us to consider whether the court below would have had jurisdiction to afford relief if the right asserted had not been repugnant to the provisions of the act to regulate commerce. It follows, from what we have said, that the court below erred in the construction which it gave to the act to regulate commerce."

In *Robinson* v. *Baltimore, etc., R. Co.* (1912), 222 U. S. 506, 32 Sup. Ct. 114, 56 L. Ed. 288, it was held by the Supreme Court of the United States that an investigation by the Interstate Commerce Commission, and an appropriate finding and order are prerequisite to the right of a shipper to recover damages from a carrier for the claimed excess paid under an established rate attacked as discriminatory. In *Morrisdale Coal Co.* v. *Pennsylvania R. Co.* (1913), 230 U. S. 304, 33 Sup. Ct. 938, 57 L. Ed. 1494, the court held that a suit by a shipper, to recover damages from a carrier, for an unlawful distribution of cars to it, and an undue allotment of cars to a competitor, cannot be maintained in advance of a ruling by the commission that the practice or method of distribution was unreasonable. In *Pennsylvania R. Co.* v. *International Coal Mining Co.* (1913), 230 U. S. 184, 33 Sup. Ct. 893, 57 L. Ed. 1446, the court said: "So far as the determination depends upon facts, no jurisdiction to pass upon the administrative questions involved has been conferred upon the courts. That power has been vested in a single body, so as to secure uniformity and to prevent the varying and sometimes conflicting results that would flow

NOVEMBER TERM, 1913.  311

St. Louis, etc., R. Co. *v.* J. S. Patterson Constr. Co.—181 Ind. 304.

from the different views of the same facts that might be taken by different tribunals.''

In *Mitchell Coal, etc., Co.* v. *Pennsylvania R. Co.* (1913), 230 U. S. 247, 33 Sup. Ct. 916, 57 L. Ed. 1472, it was held that a shipper of coal cannot maintain a suit against a carrier, in advance of the commission's action, for damages for certain rebates in the form of trackage or lateral allowances from the published tariff. In the course of the opinion, it was said: ''The plaintiff's cause of action for damages occasioned by the payment of illegal or unreasonable allowances was one which, under §§8 and 9 of the commerce act (24 Stat. at L. 382, chap. 104, U. S. Comp. Stat. 1901, p. 3159), could only be brought in a district or circuit court of the United States. * * * On this hearing, involving a matter of jurisdiction, we cannot pass upon these questions which go to the merits of the controversy. But these claims of the parties emphasize the fact that there are two classes of acts which may form the basis of a suit for damages. In one the legal quality of the practice complained of may not be definitely fixed by the statute so that an allowance, otherwise permissible, is lawful or unlawful, according as it is reasonable or unreasonable. But to determine that question involves a consideration and comparison of many and various facts and calls for the exercise of the discretion of the rate-regulating tribunal. The courts have not been given jurisdiction to fix rates or practices in direct proceedings, nor can they do so collaterally during the progress of a lawsuit when the action is based on the claim that unreasonable allowances have been paid. If the decision of such questions was committed to different courts with different juries the results would not only vary in degree, but might often be opposite in character—to the destruction of the uniformity in rate and practice which was the cardinal object of the statute. The necessity under the statute of having such questions settled

312 SUPREME COURT OF INDIANA,

St. Louis, etc., R. Co. *v.* J. S. Patterson Constr. Co.—181 Ind. 304.

by a single tribunal in order to secure singleness of practice and uniformity of rate has been pointed out and settled in Abilene, Pitcairn, and Robinson cases, * * *. It is argued that this conclusion ignores §§9 and 22, which give the shipper the option of suing in the courts or applying to the commission. The same argument was made and answered in the Abilene case by showing that to permit suits based on the charge that a particular practice was unreasonable, without previous action by the commission, would repeal the many provisions of the statute requiring uniformity and equality. For, manifestly, such uniformity and equality cannot be secured by separate suits before separate tribunals involving the reasonableness of a rate or practice. The evidence might vary and, of course, the verdicts would vary, with the result that one shipper would succeed before one jury and another fail before a different jury, where the reasonableness of the same practice was involved. Manifestly, different verdicts would occasion inequality between two shippers and it is equally manifest that if the commission had made one order of which both could avail themselves, there would have been one finding, of which one, two or a score of shippers could equally avail themselves.'' In the same case, it was held on page 922 that courts cannot indirectly exercise a rate-regulating power.

In *United States* v. *Pacific, etc., R. Co.* (1913), 228 U. S. 87, 33 Sup. Ct. 443, 57 L. Ed. 742, in discussing the purpose of the interstate act, the court said: ''And it would in our judgment be an erroneous view to take that the great problems which the act was intended to solve, and the great purposes it was intended to effect should be considered of less consequence than the facility which should be given to some particular remedy, civil or criminal. We need not extend the discussion. The purpose of the Interstate Commerce Act to establish a tribunal to determine the relation of communities, shippers and carriers, and their respective

NOVEMBER TERM, 1913. 313

St. Louis, etc., R. Co. *v.* J. S. Patterson Constr. Co.—181 Ind. 304.

rights and obligations dependent upon the act has been demonstrated by the cited cases". In *Baltimore, etc., R. Co.* v. *United States, ex rel.* (1910), 215 U. S. 481, 30 Sup. Ct. 164, 54 L. Ed. 292; it was held that the distribution of coal cars to shippers is a matter involving preference and discrimination, and courts are not invested with jurisdiction over regulations in regard to such distribution until after action by the interstate commission. In *Loomis* v. *Lehigh, etc., R. Co.* (1913), 208 N. Y. 312, 101 N. E. 907, the New York Court of Appeals held that state courts had no jurisdiction of an action by a shipper against a carrier for damages for failure to furnish suitable grain doors for cars used in interstate traffic.

The action declared on in the seventh and eighth paragraphs here shows a contention relating to the lawful construction of an interstate tariff. Such construction would require the court to elucidate and declare the true meaning of the rate. *Terre Haute, etc., R. Co.* v. *Erdel* (1902), 158 Ind. 344, 62 N. E. 706. The authority to decide a matter involves the power to make an erroneous decision. It is manifest that the courts of Indiana might adopt appellee's construction of the rate, while those of Missouri might adopt appellant's. These different constructions would destroy the uniformity in rates sought by the enactment of the interstate act, and we are of the opinion that the trial court was without jurisdiction of the cause of action averred in the seventh and eighth paragraphs of complaint and the court erred in overruling appellant's demurrers thereto.

Appellant contends further that the State courts have no jurisdiction to determine the question of overcharges by a carrier in the distribution of cars used in interstate traffic, and therefore its demurrers to the sixth paragraph of complaint should have been sustained. We are constrained to adopt this view of the law. *Chicago, etc., R. Co.* v. *Hardwick, etc., Elevator Co.* (1913), 226 U. S.

426, 33 Sup. Ct. 174, 57 L. Ed. 284, 46 L. R. A. (N. S.) 203; §§1, 13, 14, Interstate Commerce Act.

It is conceded that the trial court had jurisdiction of the causes of action stated in the second and fourth paragraphs of complaint. Some questions are presented relative to the rulings of the trial court, during the progress of the trial, on matters involved in the determination of the issues joined on said paragraphs. Without setting out these contentions, it is sufficient to say that there was no error.

For reasons stated, the judgment must be reversed. Were it possible to determine from the record the amount awarded appellee, by the verdict, on the second and fourth paragraphs of complaint, we would put an end to the litigation by reducing the amount of the judgment. *Loomis* v. *Lehigh, etc., R. Co., supra.* But such determination cannot be made here. There was evidence given that would have warranted the jury in assessing as much as $1,000 on either the seventh or eighth paragraph alone.

Judgment is reversed with instructions to sustain appellant's demurrer to the first, sixth, seventh and eighth paragraphs of complaint and to sustain its motion for a new trial.

NOTE.—Reported in 104 N. E. 512. See, also, under (2) 7 Cyc. Anno. 486. As to statutes fixing charges of interstate carriers to extrastate points, see 44 Am. Rep. 677. As to the power of a State court to pass on interstate rates, see 28 L. R. A. (N. S.) 108. As to the jurisdiction of a State court of an action to recover an overcharge for freight in interstate shipment, see Ann. Cas. 1913 D 272.