## BANNER GRAIN COMPANY v. GREAT NORTHERN RAILWAY COMPANY.[1]

July 26, 1912.

Nos. 17,578—(129).

**Switching charges — carrier's duty to consignees.**

Action to recover for the amount paid defendant for switching cars to plaintiff's elevator on the alleged ground that the exaction thereof was a discrimination. Upon the facts found the trial court ordered judgment for one dollar. *Held:*

1. A carrier is bound to treat all shippers with equality and without discrimination. It is also bound, unless there be custom or contract to the contrary, when it receives shipments in carload lots, to make delivery at the consignee's place of business when located on its industrial tracks, or to connecting carriers and switching roads when the consignee's business is located thereon. It is not, however, bound, at its own charge, to make such delivery beyond its own or leased tracks.

2. Findings of fact considered, and *held* that they sustain the conclusion of law that the plaintiff was entitled to judgment for one dollar only.

Action in the district court for Hennepin county to recover $837 switching charges collected from plaintiff. The substance of the complaint and answer will be found in the opinion. The case was tried before Holt, J., who made findings and as conclusion of law ordered judgment in favor of plaintiff for one dollar. From an order de-

1 Reported in 137 N. W. 161.

nying plaintiff's motion to amend the findings and conclusions of law and from an order denying its motion for a new trial, it appealed. Affirmed.

*Collins & Eaton,* for appellant.

*Cobb, Wheelwright & Dille,* for respondent.

START, C. J.

This action was begun in the district court of the county of Hennepin to recover $837 for switching charges collected by the defendant from the plaintiff. The complaint alleged that between February, 1906, and May, 1909, the plaintiff owned and operated a grain elevator, known as the Quaker elevator, located in the city of Minneapolis and on the tracks of the Chicago & Great Western Railway Company, hereafter referred to as the Great Western; that there were also located on such tracks four other similar elevators and industries, namely, those of the Archer-Daniels Linseed Company, Russell-Miller Milling Company, the Merchants Elevator Company, and a plant of the Republic Creosoting Company, which required and received similar service in switching cars as the plaintiff's elevator did; that such tracks were connected with the defendant's, the Great Northern, by a direct switch; that the defendant switched cars to such other elevators and industries without charge, but discriminated against the plaintiff and exacted and collected from it one dollar for each car switched to its elevator, in all eight hundred thirty-seven cars, for which it paid $837, and, further, that the plaintiff demanded of the defendant the same facilities as the other industries received, which were refused.

The answer denied that the defendant had discriminated against the plaintiff, and alleged that the plaintiff's elevator was not located on the defendant's tracks, nor upon the tracks of any other company over which defendant had the right to run its engines and cars to plaintiff's elevator, but on those of the Great Western; that the switching charges in question were collected by the defendant for the Great Western, with which it was a connecting line, and paid to it pursuant to its legally published tariff rate for such service, which was duly filed with the Interstate Commerce Commission; that by

such tariff rate the charge for switching cars from connecting lines, when the origin or destination of the shipment was outside of the corporate limits of the station, was one dollar per car; and, further, that the shipment in each of the cars for which switching charges were made and paid originated outside such corporate limits.

The cause was tried by the court without a jury. The controlling facts were stipulated by the parties, and the trial court found the facts substantially as stipulated. It is impracticable here to state such facts in detail because of their volume. They were, however, to the effect that the allegations of the answer were true, and, further, that the defendant, by contracts entered into between it and the Great Western, acquired, for a valuable consideration paid by the defendant, the right to use the tracks of the Great Western connecting with its own and leading to the several elevators and industries named in the complaint, other than that of the plaintiff, which was located near but beyond the last, in order, of the other industries, for the purpose of switching cars thereto from its own lines; that by the terms of such contracts the defendant was also given the right to secure the use of the Great Western tracks to plaintiff's elevator by assuming the burden of paying compensation therefor; that the defendant did during the times stated in the complaint switch cars from its own line to such elevators and industries on the leased tracks without additional charge therefor; that the defendant had no contract or arrangement giving it the right to use any of the tracks of the Great Western at such terminals or to do switching thereon, or to have cars going over its line thereto or therefrom without switching charges, except as provided in the contracts referred to, nor did it deliver to or take from, or cause to be delivered to or taken from, any industry or any concern on such tracks any car or shipment without the collection of the tariff switching charges therefor, except as herein stated; that during the time stated the defendant collected from the plaintiff $837 for such switching charges, and paid the same to the Great Western, but as to one of the cars the switching charge, one dollar, was collected without right; and, further, that the plaintiff at various times demanded of the defendant that it provide the same facilities for switching cars to the Quaker elevator as to the

other similar industries, but the request was ignored until May 18, 1909.

The trial court found as a conclusion of law that the plaintiff was entitled to recover only one dollar and costs, and ordered judgment accordingly. The plaintiff made a motion for amended findings of fact in several particulars, and, further, that the conclusion of law be amended so as to direct judgment for the plaintiff in the sum of $837 and costs. The motion was denied. The plaintiff then made a motion for a new trial, and appealed from an order denying it.

The plaintiff assigns as error the denial of its motion to amend the findings of fact, but the alleged error is not discussed or urged in the brief of counsel, and is deemed to have been waived. The real question on this appeal is whether the facts found support the trial court's conclusion of law, or, in other words, do they show as a matter of law a discrimination against the plaintiff.

The law applicable to this question is well settled. A carrier is bound to treat all shippers with equality and without discrimination as to shipping facilities on its own or leased lines. When a carrier receives shipments in carload lots, it is bound, unless there be custom or contract to the contrary, to make delivery at the consignee's place of business, when located on its industrial tracks, or to connecting carriers and switching roads, when the consignee's business is located upon the tracks of such other roads. It is not, however, bound at its own charge to make such delivery beyond its own or leased tracks.

Now, it appears from the facts found by the trial court that the plaintiff's elevator was not located on the tracks of the defendant or on any track leased by it, but upon that part of the tracks of another carrier in which the defendant had no rights whatever. It also appears that the switching charges in question were collected from the plaintiff for the Great Western, in accordance with its published tariff rates, and paid to it. The charge of one dollar for each car switched was not for the defendant's benefit. It made no charge for its services in switching the cars either to the industries on its leased tracks, or in switching them to industries not on such tracks. It simply collected from the plaintiff the necessary switching charges

exacted by the Great Western, in accordance with its published tariff rates for switching the cars over the part of its tracks not leased. It is clear, then, that the defendant treated all shippers similarly situated with equality. The plaintiff's misfortune was that it was not on the leased tracks.

The facts show that there was no discrimination against the plaintiff, unless the defendant was bound to secure and pay for a lease of the tracks to the elevator of the plaintiff. Whether the plaintiff might have secured free switching of cars from defendant's line to its elevator by application to the proper commission we need not inquire, for the fact remains that the defendant could not before an adjustment of the matter by the commission furnish such free switching without either securing an extension of the leased tracks and paying therefor, or by paying the switching charges. We hold that it was not bound to do either, and that the court's findings of fact support its conclusion of law.

Order affirmed.

HOLT, J., having tried the case below, took no part.