# A. M. McCALLUM and Another v. MINNEAPOLIS & RAINY RIVER RAILWAY COMPANY.[1]

March 19, 1915.

Nos. 19,079—(274).

**Carrier — recovery of trackage charge without service rendered.**

The defendant, a railroad company, owns and operates a main line of railroad extending from Deer River to the north in Itasca county. It operates a number of connecting stub lines, the roadbed and ties of which are owned by a lumber company. It owns the rails and fasteners, it laid the rails, and it maintains the tracks and roadbed in condition. It is in exclusive control of the stub lines as a common carrier. It maintains a distance mileage tariff for freight originating on the stub lines and consigned to Deer River the same as from points on its main line to Deer River. It exacts a charge of one dollar per car, called a trackage charge, in addition to its published tariff rates, for cars originating on the stub lines, except those of the lumber company, and pays it to the lumber company. It renders no service for such charge. It is *held* that such charge is invalid, and that the plaintiffs, paying involuntarily, are entitled to recover it.

Action in the district court for Itasca county to recover $1,543, the total amount of trackage charges paid to defendant on 1543 cars of freight. The answer, among other matters alleged that the larger part of plaintiffs' shipments were destined to points outside of the state of Minnesota; that the greater part of the balance of such shipments and those destined to points within the state of Minnesota, in reaching such points, passed through the adjoining state of Wisconsin; that as to all these shipments the same constituted interstate commerce over which the courts of Minnesota had no jurisdiction, the jurisdiction of them being exclusively in the Interstate Commerce Commission and the Federal courts. The case was tried before Stanton, J., who denied defendant's motion for a directed verdict in favor of plaintiffs for nominal damages only, and a jury which returned a verdict for the amount demanded. Defendant's motion

[1] Reported in 151 N. W. 974.

for judgment notwithstanding the verdict was granted. From the judgment in favor of defendant entered pursuant to the order for judgment, plaintiffs appealed. Reversed.

*Fryberger, Fulton & Spear,* for appellants.

*Powell & Simpson* and *Ernest C. Carman,* for respondent.

DIBELL, C.

This action was brought by the plaintiffs to recover a so-called trackage charge of one dollar a car upon shipments of forest products over defendant's railroad. The payments were involuntary. There was a verdict for the plaintiffs. On the alternative motion of the defendant for judgment or for a new trial judgment was ordered notwithstanding the verdict. Upon this order judgment was entered. The plaintiffs appeal from the judgment.

The defendant is a railroad corporation organized under the laws of this state. It was incorporated in 1904. Its line extends from Deer River in Itasca county some 50 miles to the north. It has a connection at Deer River with the Great Northern. Deer River is its operating and general headquarters. This line of road was originally constructed and owned by the Itasca Lumber Co., a private corporation, and was operated as a logging road. In 1904, upon its incorporation, the road was taken over by the defendant. There is a common ownership of the stock of the railroad company and the lumber company.

There are a number of stub lines connecting with this main line. The roadbed of the stub lines was constructed and the ties furnished and laid by the lumber company. The rails and fasteners are owned by the railroad company. It laid the rails and maintains the roadbed and tracks. The lumber company does not own all of the right of way but has permissive, or at least unrestrained, use of it. None of the stub lines exceeds five miles in length.

For a number of years the railroad company has operated over these stub lines and is in all respects a common carrier over them. By G. S. 1913, § 4247, carriers include all common carriers engaged in transportation "whether such carrier owns or operates the line or lines" over which it transports. By the next section railroad is

made to include "all the road in use by any corporation operating a railroad, whether owned or operated under a lease or other contract."

The defendant is as much a common carrier over these stub lines as over its main line. It has established a mileage distance tariff of freight charges. It charges a distance mileage tariff from the point of origin on the lumber company's stubs to Deer River. The charge is graduated on a five mile basis, all distances less than five miles being counted five miles. It makes a like charge on its main line. Its local freight tariff contains this provision:

"A trackage charge of one dollar per car in addition to regular freight rates will be charged for the Itasca Lumber Company on all business moving to or from points on their lines."

For this trackage charge the defendant performs no service. It is not a transportation charge or a switching charge or a terminal charge or a storage charge. It does nothing in return for it. It is in no sense a service charge. There are no contractual or other relations between the plaintiffs and the lumber company. The charge is either in the nature of an overhead charge of the railroad company, or a charge exacted for the lumber company for the use of the stubs. It is exacted of all except the lumber company.

The plaintiffs' shipments originated on the stub lines and went to Deer River. Those involved in this action were largely intended for transportation to points outside the state over the Great Northern. They were rebilled from Deer River. No joint rate was established. The shipments going outside the state were interstate within Seaman v. Minneapolis & Rainy River Ry. Co. 127 Minn. 180, 149 N. W. 134, which was based on Texas & N. O. R. Co. v. Sabine Tram Co. 227 U. S. 111, 33 Sup. Ct. 229, 57 L. ed. 442. No interstate rate was filed with the Interstate Commerce Commission and none was established.

We are of the opinion that under the facts stated, and there is no substantial dispute about them, the plaintiffs are entitled to recover. The defendant performed no service for which it could make a trackage charge. It could not exact a charge for the lumber company for the use of the roadbed over which it was a common carrier.

It could make a reasonable service charge. It could not exact an overhead charge or a charge for the benefit of the lumber company.

The defendant attaches controlling importance to the decision in Banner Grain Co. v. Great Northern Ry. Co. 119 Minn. 68, 137 N. W. 161, 41 L.R.A.(N.S.) 678. This was an action to recover switching charges of one dollar per car alleged to be discriminatory. The plaintiff's elevator was not on the defendant's line but was on the line of the Great Western. The defendant, which connected with the Great Western, switched cars coming from its line over the Great Western to the plaintiff's elevator, and collected for the Great Western the one dollar a car switching charge which was the legally published tariff rate for such service filed with the Interstate Commerce Commission. The Great Northern was not operating the track to plaintiff's elevator as a common carrier, was not obliged to deliver beyond its own lines, and made no service charge for itself. There was no discrimination and the plaintiff failed to recover. Here the defendant was operating the stub lines as a common carrier, and exacted a trackage charge which must be viewed either as an overhead charge, and therefore not a service charge, or a collection for the lumber company which owned the ties and roadbed. The situation is entirely different.

The defendant cites a number of interstate commerce cases, notably the following: Interstate Com. Com. v. Chicago, B. & Q. R. Co. 186 U. S. 320, 22 Sup. Ct. 824, 46 L. ed. 1182; Interstate Com. Com. v. Stickney, 215 U. S. 98, 30 Sup. Ct. 66, 54 L. ed. 112; Walker v. Keenan, 73 Fed. 755, 19 C. C. A. 668. They do not, as we read them, militate against the view we take.

A number of cases are cited in support of the proposition that the Itasca Lumber Co. is not a common carrier, the significance being that it was not within the jurisdiction of the Railroad and Warehouse Commission. This is conceded. It is not a common carrier nor even a private carrier. It has a roadbed and ties but the defendant is the common carrier which exclusively operates over them.

The suggestion is made that the result reached amounts to a confiscation of the property of the lumber company. The lumber company is not in this suit. It presents to the court no grievance. It

and the plaintiffs sustain no contractual or other relations. And besides it is not injured.

It is suggested that such a holding as we make might, through some action of the Railroad and Warehouse Commission, result in requiring the defendant to purchase stub lines for the accommodation of shippers. This cannot be so. The lumber company was not required to permit the use of its roadbed by others. The defendant railway company was not required to operate these stub lines as a common carrier. It was not required to run its cars in and take out the products of the plaintiffs. It undertook to operate these stub lines as a common carrier. Then it became entitled to reasonable transportation and service charges and was charged with correlative duties. It did not become entitled to make a charge to which it was subjected because it did not own the stub lines, or which was required by the owner of the lines to be collected from shippers before their use would be permitted.

We place our decision upon the ground that the defendant was a common carrier over the stub lines just as much as over its own main line—and there can be no possible question of the correctness of this—and that it was limited in its charges to service charges, none of which by a proper construction can be held to include the trackage charge exacted for the lumber company.

We are cited no case in its facts at all like the one before us. The absence of such a case, we apprehend, is because such a situation has not arisen rather than because the validity of charges so made is conceded.

There may be nothing unjust in the lumber company receiving compensation for its roadbed. That is not the question. A holding which permits a common carrier to exact, in addition to regular freight rates, a charge, for which it renders no service, for the benefit of a corporation which is interested in the roadbed, might lead to abuses and is not to be favored. The harm to be apprehended is greater when there is a common ownership of the stock of the corporations and the corporation getting the charge is in competition with the other shippers.

There was received in evidence an order of the Railroad and

Warehouse Commission bearing upon rates. It was stricken out. This is claimed by the plaintiffs to be error. This order in any event affected only a part of the trackage charges; and in view of the conclusion we have reached we make no comment upon it.

The judgment is reversed with directions to enter judgment upon the verdict. If for the purposes of further proceedings the defendant desires final judgment in this court counsel can so indicate.

Judgment reversed.