Johnson, J.
The Morgan Run Railway Company was created and organized under the laws of Ohio in 1889 for the purpose of constructing and operating a steam railroad from Coshocton to Cambridge. Only a little over three miles of road has been constructed and operated. This extends from the junction with the Wheeling & Lake Erie *224 railway up the Morgan Run valley to the mines of The Morgan Run Coal & Mining Company. It is contended by the plaintiff in error that the line of railroad from the junction with the Wheeling & Lake Erie to a point on the township line between two townships in Coshocton county is the property of the railroad, and that the tracks extending beyond that line are the property of The Morgan Run Coal & Mining Company. The railroad is one continuous line of road from the Wheeling & Lake Erie junction to its farthest end at the mines of the coal and mining company, with switches and turnouts to the several mines located on the way.
Since 1910, The Morgan Run Railway Company has had on file with the Public Utilities Commission a tariff covering rates from points which are now alleged to be on The Morgan Run Coal & Mining Company’s tracks, and has also filed a code of demurrage rules in which the station, “Morgan Run Mine, Ohio,” is shown, this point being also beyond the township line. The railway company has conducted its operation along the entire line of road.
The plaintiff in error, being so created, organized and operated, is a common carrier under obligation to serve the public without discrimination, and is amenable to the supervision of the Public Utilities Commission in the conduct of its business as such. State v. Hazelton & Leetonia Ry. Co., 40 Ohio St., 504; Scofield v. L. S. & M. S. Ry. Co., 43 Ohio St., 571; Adena Rd. Co. v. Pub. Serv. Comm., 92 Ohio St., 1, and Hocking Valley Ry. Co. v. Pub. Util. Comm., Id., 9.
*225 The act creating the Public Utilities Commission, Section 487 et seq., General Code, defines the jurisdiction of the commission and prescribes the method of its exercise.
It is clear that the order of the commission, in so far as it affects the operation of the line owned and operated by the railway company, must be affirmed. The company has no right to make any of the discriminations complained of.
It is conceded that the controlling interest in the railway company and the coal company was owned by substantially the same persons, although in different proportions, and that the same person was president of both companies.
Some years ago the heirs of Washington Burt, deceased, sold to the railway company a 33-foot strip across a tract of land owned by them along the line on which the railway company was extending its tracks. The deed to the railway company for this strip contained the terms of an agreement by the company to construct and operate across the same a railroad with main track and necessary sidetracks, switches, turnouts, etc., and to secure to the grantors, their heirs and assigns, or anyone holding under them, equal'facilities with all other shippers for receiving and shipping freight. It provided that the grantors, their heirs and assigns, should have the right to build a railroad track or switch from the premises so conveyed to the premises now owned by them, and specifically set forth provisions for the furnishing of shipping 'facilities in connection therewith,
*226 The railway company built its line of railroad across the 33-foot strip and extended it about a half mile beyond to a new mine of The Morgan Run Coal & Mining Company. John and Peter Ingham, the complainants before the commission, have acquired the rights of the Burt heirs in the land and in the agreement referred to. A loading platform was constructed along the public highway on the 33-foot strip for the loading of coal from wagons on to cars, and coal was, from time to time, transported by the railway company from that point to the Wheeling & Lake Erie at a fixed price per ton. The 33-foot strip was not connected with the portion of the line of railroad which is conceded to be the railway company property. It was near a portion of the line claimed by the coal company. Subsequently the strip was conveyed by the railway company to the coal company and the line of road was shifted therefrom to land of the coal company. The proceeding before the Public Utilities Commission grew out of the refusal of the railway company to continue the service which it had been rendering to the Ingham mines.
It is contended that the order of the commission requires the railway company to furnish facilities and operate a line on property not owned by it; that the commission has no jurisdiction to require one who is not a common carrier to act as such; and that the tracks which are located on the land of the coal and mining company are the private tracks of that company, over which the commission has no jurisdiction.
*227 Section 523, General Code, provides that the commission shall have the same control over private tracks, so far as such tracks are used by common carriers in connection with a railroad for the transportation of freight, as it has over tracks of such railroad. Section 8990, General Code, requires all railroad companies to extend to all- persons receiving and shipping freight the same and equal opportunities. This statute is declaratory of the common law on the subject.
As we have shown, the railway company is, as to so much of the line of railroad as is owned or operated by it, a common carrier; and any arrangement made by it for the transportation of freight over its road in connection with private tracks is subject to the supervision of the commission.
Authorities are cited by plaintiff in error which show that courts have prevented the enforcement of orders, which, in their effect, operated to deprive persons of property without due process of law, or-that require work the expense of which would be out of proportion to any reasonably anticipated return. .
It is contended that the order of the commission in this case in effect requires -the railway company to extend its line over property which it does not own, to purchase equipment which it is unable to buy, and forces the coal company to grant the use of its land to the railway company for the benefit of a competitor.
While a railroad company’s property must be used by the company in the performance of its duty to the public, and in this behalf is subject to gov *228 ernmental supervision, beyond this it must be held to have the right to control its own affairs and to manage its business in its own way so long as it does not injuriously affect the public or exceed its charter powers. Matters of purely business policy must be left to the decision of the company, and except in unusual circumstances, the question whether it shall extend its lines to points not before reached, or engage in any additional enterprise, is one to be determined by its directors. Chicago, M. & St. P. Rd. Co. v. Wisconsin, 238 U. S., 491; Gt. Northern Ry. Co. v. Minnesota, Id., 340, and Atchison, T. & S. F. Ry. Co. v. Railroad Commission, 173 Cal., 577.
Now, in this case, there was a dispute as to whether the railway company was the owner of the entire line and equipment.
In the year 1917 The Morgan Run Railway Company filed with the State Tax Commission a statement, verified by the oath of its president, who was also president of the coal company, in which it is stated that the railway company was the owner of the lines in question, 3.48 miles in length, from the Wheeling & Lake Erie railway to the mines of the coal company.
But assuming for the purpose of this case that the Public Utilities Commission had no authority to finally adjudicate the question of title, and assuming, without deciding, that the coal company was the owner of the portion of the line which it claims, we are still confronted with the fact that the railway company insists on a plan of procedure which will result in the operation, ex *229 clusively for the coal company’s benefit, of all that portion of the line which is concededly owned by the railway company. As a common carrier, subject to the control of the state and its commission, the railway company denies to complainants the benefit of the provisions of Section 523, General Code, above set out. It must be noted that by the terms of that section it is not necessary that the railway company own the line. It is sufficient to give the commission jurisdiction that private tracks are used in common with the line of the railway company.
In W. C. Agee & Co. v. L. & N. Rd. Co., 142 Ala., 344, it was held that a railroad which serves business houses located along a spur track by delivering to them cars of freight, and cars to be freighted and shipped, is a common carrier with respect to the use it makes of the track, and is, as such, bound to treat the houses located along the track without discrimination, and cannot discontinue its service as to one and continue it as to others. In that case the answer averred that the track was owned by and was on the land of the complainants, and persons other than defendant, and that the car service thereon was not rendered by the railroad company as a common carrier. The court held that on the facts stated it was a common carrier.
In McCallum et al. v. Minneapolis & R. R. Ry. Co., 129 Minn., 121, the defendant company owned and operated a line of railroad, and also a number of connecting stub lines, the roadbed and ties of which were owned by a lumber company. The *230 railway company owned the rails and fasteners, and laid the rails and maintained the tracks. It exacted a charge of one dollar per car, called track-age charge, in addition to the tariff rates for cars originating on the stub lines, except those of the lumber company. In holding such charge invalid, the court, after stating that it was contended that the lumber company was not a common carrier and not within the jurisdiction of the commission, say at page 124: “This is conceded. It is not a common carrier nor even a private carrier. It has a roadbed and ties but the defendant is the common carrier which exclusively operates over them. The suggestion is made that the result reached amounts to a confiscation of the property of the lumber company. The lumber company is not in this suit. It presents to the court no grievance. It and the plaintiffs sustain no contractual or other relations. And besides it is not injured. * * * The lumber company was not required to permit the use of its roadbed by others. The defendant railway company was not required to operate these stub lines as a common carrier. It was not required to run its cars in and take out the products of the plaintiffs. It undertook to operate these stub lines as a common carrier. Then it became entitled to reasonable transportation and service charges and was charged with-correlative duties. * * * We place our decision upon the ground that the defendant was a common carrier over the stub lines just as much as over its own main line.” The court further point out that a different holding might lead to *231 abuses, and say: “The harm to be apprehended is far greater when there is a common ownership.”
In Bedford-Bowling Green Stone Co. v. Oman et al., 115 Ky., 369, the railroad company had a contract by which it operated over a switch owned by one of the parties, and the court say at page 379: “So far as this record shows, it exercises the same control and dominion over this line that it does over any other part of its system; and we think, by the terms of the contract in question, the switch, during the continuance of the contract in question, at least, becomes a part of the general system of the Louisville & Nashville Railroad Company. This being so, it can not lawfully refuse to receive and transport freight belonging to appellees to and from such reasonable points along the line at which they may lawfully ship or receive it. * * * ‘And they have no right to contract with a corporation or individual to give exclusive rights to transfer any commodity over any part of their line. * * * By accepting its charter the railroad company assumed obligations to the public.’ ”
Again assuming, for the purposes of this case, that the coal company owns the portion of the railroad claimed by it, and that the coal company itself made up the deficiency in the cost of operating the railroad, still the railway company has no right to make the discrimination found by the commission to be made. It is not a question as to the right of the railway company to take and use the lands or property of the coal company without consent and without compensation. It is a question as to the right of a corporation, having all the rights and *232 subject to all of the duties and obligations of a common carrier, to operate its own line for the exclusive benefit of the coal company, and to use the coal company’s line over the coal company’s property with its consent to transport its coal to and over the railway company’s line, all to the exclusion of the general public or those who have the right to equal shipping privileges.
We therefore hold that as long as the railway company operates any portion of the railroad in question, it must do so without discrimination in favor of any shipper.
This is a small and unimportant railroad, whose operations are very limited, but the questions that are brought to the court for consideration are not limited. They affect every common carrier. If this company may arbitrarily select those whom it will serve, any company may do so.
The order of the commission will be modified so as to be effective over the line claimed by the coal company during such period as it is used by the railway company for the transportation of freight, and as so modified will be affirmed.

Order affirmed.

Nichols,. C. J., Wanamaker, Newman, Jones, Matthias and Donahue, JJ., concur.