## BELL LUMBER COMPANY v. GREAT NORTHERN RAILWAY COMPANY.[1]

December 29, 1916.

Nos. 20,106—(246).

**Carrier — classification of commodities — rate on fence posts.**

When chapter 232, Laws 1907, went into effect, defendant's tariff on fence posts in carload lots was 75 per cent of its lumber rates. Said law fixed the lumber rate at less than defendant's schedule. It never obtained the consent of the Railroad and Warehouse Commission to a new schedule established by it, or to a change of the rules and regulations governing the rates on fence posts as they were when the law went into effect. *Held*, the legal rate for fence posts remained at 75 per cent of the legal maximum rate for lumber as fixed by said chapter.

Action in the district court for Ramsey county to recover excess charges upon seven carloads of fence posts shipped over defendant's road. The case was tried before Olin B. Lewis, J., who made findings and ordered judgment for $57.13 with interest, in favor of plaintiff. Defendant's motion for a new trial was denied. From the judgment entered pursuant to the order for judgment, defendant appealed. Affirmed.

*M. L. Countryman* and *J. F. Finerty,* for appellant.

*Lyndon A. Smith,* Attorney General, and *Henry C. Flannery,* Assistant Attorney General, for respondent.

HOLT, J.

Plaintiff, a shipper, recovered from defendant a certain amount claimed to have been charged in excess of the legal freight rate upon carload shipments of fence posts between stations in Minnesota. The shipments were made during 1910. Defendant appeals.

The trial court held that the legal maximum rate for the shipment of fence posts, in carload lots between points within this state, during 1910 was 75 per cent of the maximum lumber rates as fixed by chapter 232, p. 313, Laws of 1907 (sections 4298 and 4299, G. S. 1913), whereas de-

[1] Reported in 160 N. W. 688.

fendant contends that no maximum rate was ever fixed by statute upon the commodity here involved, therefore defendant's charge of 75 per cent of the lumber tariff as published by it was lawful.

When the law mentioned took effect, there was in force a published tariff of defendant railway company containing this provision: "Posts for fencing or paving purposes C. L. (carload) minimum weight 24,000 lbs., to all stations named herein, except stations west of Buford, N. D., will be charged 75 per cent of lumber rates," etc. Chapter 232, p. 313, Laws 1907, placed certain commodities in classes, from number 11 to 17, for the purpose of fixing a maximum rate for each of such classes. Commodities in classes one to ten inclusive were not touched. We assume the classification recognized in the statute to be the one adopted by the carriers and in vogue at the time of the passage of the act. Before the act went into effect the state authorities were enjoined from enforcing it by the Federal court, but on appeal the injunction was dissolved July 21, 1913. Minnesota Rates Cases, 230 U. S. 352, 33 Sup. Ct. 729, 59 L. ed. 1511, Ann. Cas. 1916A, 18. While the appeal was pending defendant in 1909 published a new tariff schedule. As we understand the record, this schedule was not approved by the Railroad and Warehouse Commission as provided by chapter 176, p. 225, Laws of 1905 (sections 4290-4297, G. S. 1913), but defendant made its freight charges here upon that schedule, wherein fence posts in carload lots take 75 per cent of the lumber or pole rates therein established.

Under this situation what was the maximum legal rate which defendant could charge for transporting the shipments in suit? We take this view: Classifications and rules based thereon are recognized and necessary factors in the establishment of proper rate schedules. Under such rules and classifications, properly established by defendant, the freight rate on fence posts, in carload lots, was 75 per cent of the lumber rate when chapter 232, p. 313, Laws 1907, was to take effect, and by this law the legal maximum lumber rate was fixed and became substituted for the lumber rate established by defendant's rate schedule. Defendant, with the approval of the Railroad and Warehouse Commission, could have lawfully changed its rules and classification in respect to fence posts, but it did not. Hence, under the rules and regulations of its 1903 tariff, fence posts could take no other rate than 75 per cent of the legal lumber rate.

No force should be given the 1909 tariff schedule with its rules and classifications, for it was not established as the law prescribes. That the act of 1907 did not intend to dispense with the approval of the Railroad and Warehouse Commission to any change in the rules and classifications pertaining to the rate schedules is evident from section 7 thereof. Therefore it seems to us there was no legal right to exact more freight for these shipments than 75 per cent of the maximum fixed for class 13 in said chapter 232. In rate classifications the classes are few. Under rules and provisions related commodities may be placed in a class and take a percentage of the rate established for that class. We find that defendant's classifications so treat fence posts and a variety of other timber products whose rates must be ascertained from reference to class 13.

It may be conceded that there is nothing in said chapter 232 which prohibits a freight rate on fence posts in the same amount or even greater than therein provided for lumber. But it does not appear that defendant has lawfully established any other rate, or legally adopted any rule or classification under which it was permitted to charge any greater rate for freight on fence posts than 75 per cent of the maximum lumber rate as fixed by said chapter. No doubt the intention of defendant was to charge 75 per cent of the unlawful lumber rate fixed in its tariff of 1909, but its intention does not determine the legality of the charge. That defendant was enjoined from establishing tariff schedules in accordance with the requirement of law is true, and that defendant should not be held to blame for its failure under the circumstances may be conceded, but certainly the shipper was not at fault and may still insist on legal rates. It is also claimed that chapter 195, p. 220, Laws of 1909 (sections 4307-4312, G. S. 1913), confines recovery for excess charges upon shipments of those commodities only which are specifically named in chapter 232, p. 313, Laws 1907, and for the shipment of which that act prescribes the maximum rate. If more than legal rates have been exacted the right of recovery does not necessarily depend upon statute law. Seaman v. Minneapolis & Rainy River Ry. Co. 127 Minn. 180, 149 N. W. 134.

Our conclusion is that the trial court correctly determined the issue. Judgment affirmed.